**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| CHERI CLARKE, ET AL.,<br><br>Plaintiffs,<br><br>v.<br><br>AVEDA CORPORATION,<br><br>Defendant. | Case No. 1:21-cv-04185<br>District Judge Charles R. Norgle Sr.<br>Magistrate Judge Jeffrey Cole |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT AVEDA**
**CORPORATION'S MOTION TO DISMISS OR STAY**

## TABLE OF CONTENTS

SUMMARY AND FACTS ............................................................................................ 1

ARGUMENT ............................................................................................................. 1

   I.   This action should be dismissed in favor of arbitration. .................................... 1

   II.   The Complaint fails to state a claim. ............................................................... 5

     A.   Plaintiffs fail to allege that Aveda's Virtual-Try On platform captures biometric identifiers or information. ......................................................................... 6

     B.   Plaintiffs' Section 15(a) claims should be dismissed because they failed to state a claim. ............................................................................................................ 9

     C.   Plaintiffs' Section 15(b) claim should be dismissed. .................................... 10

       1.   Plaintiffs have not stated a claim under Section 15(b) of BIPA. ............................ 11

       2.   Plaintiffs' Complaint confirms that Aveda complied with Section 15(b). ............... 12

   III.   Alternatively, this case should be stayed pending the resolution of certain appeals. ... 13

CONCLUSION ......................................................................................................... 15

**<u>TABLE OF AUTHORITIES</u>**

<u>Cases</u>

*Am. Express Co. v. Italian Colors Rest.*,
  570 U.S. 228 (2013)................................................................................................................ 1

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)........................................................................................................... 5, 12

*Behrens v. JPMorgan Chase Bank N.A.*,
  No. 16-cv-5508, 2019 WL 1437019 (S.D.N.Y. Mar. 31, 2019) ............................................ 2

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)................................................................................................................ 5

*Berkson v. Gogo LLC*,
  97 F. Supp. 3d 359 (E.D.N.Y. 2015) ..................................................................................... 2

*Brooks v. Ross*,
  578 F.3d 574 (7th Cir. 2009) ............................................................................................... 12

*Clinton v. Jones*,
  520 U.S. 681 (1997)............................................................................................................. 14

*Cont'l Cas. Co. v. Am. Nat. Ins. Co.*,
  417 F.3d 727 (7th Cir. 2005) ................................................................................................ 1

*Cothron v. White Castle System, Inc.*,
  477 F. Supp. 3d 723 (N.D. Ill. 2020) ....................................................................... 11, 13, 14

*E.E.O.C. v. Fair Oaks Dairy Farms, LLC*,
  No. 2:11-cv-265, 2012 WL 3138108 (N.D. Ill. Aug. 1, 2012) ............................................. 14

*Everette v. Union Pac. R.R.*,
  No. 04 C 5428, 2006 WL 2587927 (N.D. Ill. Sept. 5, 2006).................................................. 1

*Faulkenberg v. CB Tax Franchise Sys., LP*,
  637 F.3d 801 (7th Cir. 2011) ............................................................................................ 1, 2

*Fteja v. Facebook, Inc.*,
  841 F. Supp. 2d 829 (S.D.N.Y. 2012).................................................................................... 2

*Hazlitt v. Apple Inc.*,
  500 F. Supp. 3d 738 (S.D. Ill. 2020)..................................................................................... 6

*Heard v. Becton, Dickinson & Co.*,
  440 F. Supp. 3d 960 (N.D. Ill. 2020) ........................................................................ 9, 10, 11

*Hines v. Overstock.com, Inc.*,
  380 F. App'x 22 (2d Cir. 2010) .............................................................................................. 2

*Hofeld v. Nationwide Life Ins. Co.*,
  59 Ill. 2d 522, 322 N.E.2d 454 (1975) .................................................................................. 2

*Hubbert v. Dell Corp.*,
  835 N.E.2d 113 (Ill. App. Ct. 2005) ................................................................................... 3, 5

*Jacobs v. Hanwha Techwin Am., Inc.*,
  2021 WL 3172967 (N.D. Ill. July 27, 2021)........................................................................ 11

*Janiga v. Questar Capital Corp.*,
  615 F.3d 735 (7th Cir. 2010) ................................................................................................. 1

*Kuznik v. Hooters of Am., LLC*,
  No. 1:20-CV-01255, 2020 WL 5983879 (C.D. Ill. Oct. 8, 2020) ......................................... 1

*Landis v. N. Am. Co.*,
   299 U.S. 248 (1936) ............................................................................................. 14
*Meyer v. Uber Techs., Inc.*,
   868 F.3d 66 (2d Cir. 2017) ..................................................................................... 3
*Munson v. Butler*,
   776 F. App'x 339 (7th Cir. 2019) ......................................................................... 14
*Nicholas v. Wayfair, Inc.*,
   410 F. Supp. 3d 448 (E.D.N.Y. 2019) .................................................................... 3
*Rivera v. Google, Inc.*,
   238 F. Supp. 3d 1088 (N.D. Ill. 2017) .................................................................... 6
*Starke v. SquareTrade, Inc.*,
   913 F.3d 279 (2d Cir. 2019) ................................................................................... 2
*Taha v. Int'l Bhd. Of Teamsters, Local 781*,
   947 F.3d 464 (7th Cir. 2020) ............................................................................... 10
*Zurich Am. Ins. Co. v. Watts Indus., Inc.*,
   417 F.3d 682 (7th Cir. 2005) ................................................................................. 1

Statutes

28 U.S.C. § 1292(b) ................................................................................................. 13
740 Ill. Comp. Stat. Ann. 14/1 .................................................................................. 1
740 Ill. Comp. Stat. Ann. 14/10 ............................................................... 6, 7, 11, 12
740 Ill. Comp. Stat. Ann. 14/15(a) ........................................................................... 9
740 Ill. Comp. Stat. Ann. 14/15(b) ............................................................... 11, 12
9 U.S.C. § 2 ............................................................................................................... 1
9 U.S.C. § 4 ............................................................................................................... 1

Rules

Fed. R. Civ. P. 12(b)(6) ......................................................................................... 1, 5
Fed. R. Civ. P. 8(a) .................................................................................................... 5
Fed. R. Civ. P. 12(b)(3) .......................................................................................... 1, 5

## SUMMARY AND FACTS

Aveda offers a Virtual Try-On ("VTO") platform on its website, which allows users to digitally experience how a different hair color may look on them. Compl. ¶¶ 9–10. The VTO platform works by superimposing different hair colors onto an image of the user's current hair color. *Id*.

Plaintiffs, on behalf of a putative class, allege that Aveda's VTO platform violates Sections 15(a) and 15(b) of the Illinois Biometric Information Privacy Act ("BIPA"), 740 Ill. Comp. Stat. Ann. 14/1 *et seq*. Compl. ¶¶ 14–15. In particular, Plaintiffs allege that Aveda collected users' images, scanned their facial geometries, and created a "database of scanned and digitized faces." Compl. ¶ 12.

The Complaint must be dismissed for at least two reasons. First, it must be dismissed in favor of arbitration because users of Aveda's VTO platform agree to arbitration as a condition of using Aveda's service. Second, even if venue in this Court were appropriate, the Complaint would have to be dismissed under Fed. R. Civ. P. 12(b)(6) because it does not plausibly allege any violation of BIPA. Instead, it merely recites the elements of BIPA and assumes that simply because Aveda is offering a VTO service, it *must* be collecting biometric identifiers or information subject to regulation by BIPA. This assumption is a non-sequitur, is not pled with *any* supporting facts, and is insufficient to move the allegations in the Complaint from conclusory and speculative to plausible, as required to survive a motion to dismiss.

**ARGUMENT**

**I.** **This action should be dismissed in favor of arbitration.**

This matter should be dismissed pursuant to Rule 12(b)(3) because Plaintiffs agreed to arbitrate the claims pleaded in their Complaint.[1]  Fed. R. Civ. P. 12(b)(3); *see Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 807 (7th Cir. 2011).  [D]ismissal pursuant to Rule 12(b)(3) is appropriate "when parties to a contract agreed to arbitrate disputes arising from that contract." *Everette v. Union Pac. R.R.*, No. 04 C 5428, 2006 WL 2587927, at *3 (N.D. Ill. Sept. 5, 2006); *see also* 9 U.S.C. § 4 (An "order directing that such arbitration proceed in the manner provided for in such agreement" should be issued where parties agreed to arbitrate the relevant claims).

Under the Federal Arbitration Act ("FAA"), there are three requirements for compelling arbitration: (1) a written agreement to arbitrate; (2) a dispute within the scope of that arbitration agreement; and (3) a refusal to arbitrate.  *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 687 (7th Cir. 2005).

Plaintiffs entered into an enforceable, binding arbitration agreement, and "[c]ourts must rigorously enforce arbitration agreements according to their terms."  *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013); *see also* 9 U.S.C. § 2 (an arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract").  The existence of a binding arbitration agreement is a question of state contract law.  *Janiga v. Questar Capital Corp.*, 615 F.3d 735, 742 (7th Cir. 2010).  New York law applies to this issue because the Terms and Conditions of Aveda's website identify it as the

---

[1] When ruling on a Rule 12(b)(3) motion to dismiss, the Court may consider materials outside the pleadings, including the arbitration agreement, without converting the motion to one for summary judgment.  *Cont'l Cas. Co. v. Am. Nat. Ins. Co.*, 417 F.3d 727, 733 (7th Cir. 2005); *Kuznik v. Hooters of Am., LLC*, No. 1:20-CV-01255, 2020 WL 5983879, at *3 (C.D. Ill. Oct. 8, 2020).

governing law.  *Terms and Conditions*, Aveda Corp., https://www.aveda.com/customer-service-terms (last visited Dec. 10, 2021);[2] *see Faulkenberg*, 637 F.3d at 809 (*citing Hofeld v. Nationwide Life Ins. Co*., 59 Ill. 2d 522, 322 N.E.2d 454, 458 (1975)) ("Generally, the law applicable to a contract is that which the parties intended, assuming such an intent. When that intent is expressed, it should be followed.").  Applying New York law, Plaintiffs entered into an enforceable agreement to arbitrate the claims pleaded in the Complaint.[3]

New York courts have repeatedly upheld the enforceability of website Terms and Conditions.  "New York courts find that binding contracts are made when the user takes some action demonstrating that they have at least constructive knowledge of the terms of the agreement, from which knowledge a court can infer acceptance."  *Hines v. Overstock.com, Inc.*, 380 F. App'x 22, 25 (2d Cir. 2010); *see also Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 841 (S.D.N.Y. 2012) (indicating that website terms are enforceable against a party that had "actual or constructive knowledge of the [Terms and Conditions] and ha[d] manifested assent to them").  Courts "look to the design and content of the relevant interface to determine if the contract terms were presented to the offeree in [a] way that would put her on inquiry notice of such terms."  *Starke v. SquareTrade, Inc.*, 913 F.3d 279, 289 (2d Cir. 2019).  Courts may infer that a plaintiff, as a "reasonably prudent [internet] user," manifested assent based on terms' placement, textual

---

[2] Although the terms and conditions of Aveda's website are periodically updated, the arbitration provisions at issue have remained materially unchanged at all relevant times.  See, *Terms and Conditions*, Aveda Corp., https://www.aveda.com/customer-service-terms (last visited Dec. 10, 2021).

[3] Even if the Court were to apply Illinois law, the result would be the same because Illinois and New York contract law are substantively similar. *See Behrens v. JPMorgan Chase Bank N.A.*, No. 16-cv-5508, 2019 WL 1437019, at *11 (S.D.N.Y. Mar. 31, 2019) ("The cardinal rule for contract interpretation, whether under Illinois or New York law, is to ascertain and give effect to the intention of the parties."); *Berkson v. Gogo LLC*, 97 F. Supp. 3d 359, 388 (E.D.N.Y. 2015) (concluding that Illinois and New York contract law "are substantively similar with respect to . . . contract formation").

references, and inclusion of hyperlinks. *See Nicholas v. Wayfair, Inc.*, 410 F. Supp. 3d 448, 454 (E.D.N.Y. 2019); *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 77 (2d Cir. 2017) ("In considering the question of reasonable conspicuousness, precedent and basic principles of contract law instruct that we consider the perspective of a reasonably prudent . . . user.").[4]

As depicted below, a link to Aveda's Terms and Conditions appears at the bottom of each webpage on Aveda's website, including the VTO page.



*Figure 1*

*Hair Color Ideas*, Aveda Corp., https://www.aveda.com/hair-color-ideas (last visited Dec. 10, 2021). There are conspicuously displayed hyperlinks to the Terms and Conditions on the same webpage as the VTO application, as well as on every page of Aveda's website. *E.g., id.* Moreover, the Terms and Conditions expressly give notice to users that they include an arbitration provision, as depicted in the following screenshot:[5]

---

[4] An application of Illinois law would not change the outcome in this respect. *See, e.g., Hubbert v. Dell Corp.*, 835 N.E.2d 113, 121-22 (Ill. App. Ct. 2005) (finding that a blue hyperlink that appeared on five different pages of a website provided notice to a reasonable person of all terms and conditions governing the sale, including an arbitration agreement)

[5] Although these terms show an effective date of February 26, 2021, they are materially unchanged in relevant part from prior versions appearing during the period of Plaintiff's claims.

**Welcome to the Aveda.com**

Effective Date: 02/26/2021

Aveda Online ("we", "us", or "our") provides the content and services available on the website www.Aveda.com ("Site") to you, including the Aveda+ Rewards program ("Program") subject to the following terms and conditions, the Aveda+ Rewards terms and conditions available at Aveda+ Rewards Terms & Conditions, our Privacy Policy and other terms and conditions and policies which you may find throughout our Site in connection with certain functionality, features or promotions as well as customer service, all of which are deemed a part of and included within these terms and conditions (collectively, "Terms and Conditions").

THE SECTION BELOW TITLED "DISPUTES" CONTAINS A BINDING ARBITRATION CLAUSE AND A CLASS ACTION WAIVER. THEY AFFECT YOUR LEGAL RIGHTS. PLEASE READ THEM.

You must be 18 years old or the age of majority in your jurisdiction in order to make a purchase on our Site. If you are under 18 years old or the age of majority in your jurisdiction, then you may not make a purchase on our Site. If you are under 13 years old, you may browse our Site. However, you may not provide personal information to us, make a purchase on the Site nor register on the Site. This Site is not directed to children under 13 years old. By accessing or using the Site, you are acknowledging that you have read, understand, and agree, without limitation or qualification, to be bound by these Terms and Conditions. IF YOU DO NOT AGREE TO THE TERMS AND CONDITIONS, YOU MAY NOT USE OUR SITE.

*Figure 2*

*Terms and Conditions*, Aveda Corp., https://www.aveda.com/customer-service-terms (last visited

Dec. 10, 2021). Moreover, the arbitration provision is listed under a large "Disputes" header in

Aveda's Terms and Conditions, with the arbitration clause in all capital letters:



**16. Disputes**

With respect to any dispute, claim, or controversy regarding the Site, all rights and obligations and all actions contemplated by these Terms and Conditions shall be governed by the laws of New York, as if the Terms and Conditions were a contract wholly entered into and wholly performed within New York. ANY DISPUTE RELATING IN ANY WAY TO YOUR USE OF THE SITE, THESE SITE TERMS AND CONDITIONS, OR THE RELATIONSHIP BETWEEN THE PARTIES (OTHER THAN CLAIMS RELATING TO THE INTELLECTUAL PROPERTY RIGHTS OF AVEDA OR OUR PARENTS, SUBSIDIARIES, AFFILIATES, PARTNERS OR LICENSORS OR CLAIMS IN EQUITY) SHALL BE SUBMITTED TO CONFIDENTIAL ARBITRATION IN NEW YORK AND YOU AGREE TO SUBMIT YOURSELF TO THE JURISDICTION AND PROCEEDINGS THEREOF. ARBITRATION MEANS THAT AN ARBITRATOR(S) WILL DECIDE THE CLAIM, AND YOU WILL NOT HAVE THE RIGHT TO SUE IN COURT OR TO HAVE A JUDGE OR JURY DECIDE YOUR CLAIM. YOUR RIGHTS TO PREHEARING EXCHANGE OF INFORMATION AND APPEALS MAY ALSO BE LIMITED IN ARBITRATION. It is further agreed that any dispute over the scope of this arbitration provision and any dispute as to whether a claim is arbitral shall be submitted to the arbitrator for decision. Notwithstanding the foregoing, to the extent you have in any manner violated or threatened to violate our intellectual property rights or the intellectual property rights of our affiliates, partners or licensors or otherwise have a cause of action in equity, we may seek injunctive or other appropriate relief in any court of competent jurisdiction and you consent to jurisdiction and venue in any such court for such purposes. Arbitration under this agreement shall be conducted under the Consumer-Related Disputes Supplementary Rules then prevailing with the American Arbitration Association. The arbitrator's award shall be binding and may be entered as a judgment in any court of competent jurisdiction.

You agree that any arbitration or proceeding shall be limited to the dispute between us and you individually, and (i) no arbitration or proceeding shall be joined with any other; (ii) there is no right or authority for any dispute to be arbitrated or resolved on a class action-basis or to utilize class action procedures; and (iii) there is no right or authority for any dispute to be brought in a purported representative capacity on behalf of the general public or any other persons. YOU AGREE THAT YOU MAY BRING CLAIMS AGAINST US ONLY IN YOUR INDIVIDUAL CAPACITY AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING.

*Figure 3*

4

*Id.* Here, the design of Aveda's website puts anyone who uses the website on notice that using it involves consenting to all Terms and Conditions, including the Arbitration Provision. Hyperlinks to the Terms and Conditions appear on each and every page on Aveda's website, including the VTO feature.

Further, this dispute falls within the parties' arbitration clause, which covers "any dispute" arising from the user's use of Aveda's website, which necessarily includes the VTO platform; and, Plaintiffs have shown their refusal to arbitrate by filing this putative class action. *Id*. As all of the requirements for arbitration are satisfied, this matter must be dismissed pursuant to Rule 12(b)(3) in favor of arbitration.

## II.  **The Complaint fails to state a claim.**

Even if Plaintiffs' Complaint were not subject to dismissal in favor of arbitration, this Court would need to dismiss it under Rule 12(b)(6) because Plaintiffs fail to state a claim because the Complaint does not allege any factual basis to support a plausible allegation that Aveda is collecting any biometric identifiers or information at all in the course of providing its VTO service.

To survive a Rule 12(b)(6) motion to dismiss, "a [C]omplaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is <u>plausible</u> on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted) (emphasis added). Moreover, the Federal Rules "contemplate the statement of circumstances, occurrences, and events in support of the claim presented' and does not authorize a pleader's 'bare averment that he wants relief and is entitled to it." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007) (citation omitted); Fed. R. Civ. P. 8(a). Here, the Complaint fails to cross the threshold from speculative and conclusory to plausible.

## A.  Plaintiffs fail to allege that Aveda's Virtual-Try On platform captures biometric identifiers or information.

BIPA places certain restrictions and requirements on the collection of "biometric identifiers" and "biometric information."  The law defines both terms: "biometric identifier means a retina or iris scan, fingerprint, voiceprint, or scan of hand and face geometry," and "biometric information means any information . . . based on an individual's biometric identifier used to identify an individual."  740 Ill. Comp. Stat. Ann. 14/10 (quotations omitted).  In other words, all claims arising under BIPA must necessarily concern biometric identifiers or information.  The Complaint, however, does not make any plausible allegations that Aveda collected any biometric identifiers or information.

This court, in *Rivera v. Google, Inc.*, explained that a biometric identifier is "a biology-based set of measurements ('biometric') that can be used to identify a person ('identifier')."  238 F. Supp. 3d 1088, 1094 (N.D. Ill. 2017).  In *Rivera*, the court evaluated whether photos taken on a Google smartphone, automatically uploaded to a cloud-based platform, and scanned to create face templates which were ultimately used by Google to *identify an individual person* in a photograph fell under BIPA's definitions of biometric identifiers or information.  *Id*. at 1090–91.  In finding that this fell under BIPA's ambit, Judge Gettlemen observed that Google's face scans, as opposed to the photographs from which they were obtained, are biometric identifiers because they were used to create *a face template to recognize an individual person*.  *Id.* at 1095–96.  Other cases in this Circuit confirm that face scans which measure geometry and permit the *identification of an individual* fall within the scope of BIPA, as contrasted to photographs that merely contain an image of an individual.  *E.g., Hazlitt v. Apple Inc.*, 500 F. Supp. 3d 738, 749 (S.D. Ill. 2020) (*vacated on other grounds*, *In re: Apple Inc.*, No. 20-8033, 2021 WL 2451296 (7th Cir. Jan. 22, 2021)).  Indeed,

BIPA expressly excludes photograph from the definition of biometric identifier, and by extension, biometric information. 740 Ill. Comp. Stat. Ann. 14/10.

The biometric identifier and information Aveda is alleged to have collected is "facial geometry" through face scans of images uploaded by Plaintiffs. Compl. ¶ 8. Indeed, the Complaint parrots the complaint against Google and accuses Aveda of maintaining a "database of scanned and digitized faces."[6] ¶¶ 11–12. The only factual basis to support these allegations, however, is that Aveda operates a VTO platform that allows a user to substitute a different hair color for their current hair color in an image. This factual basis is insufficient to move Plaintiffs' allegations concerning scanning and collection of facial geometry from conclusory and speculative to plausible.

Plaintiffs' allegations here are no more plausible than if they had alleged the capture of biometric identifiers because Aveda offered a VTO platform that allowed them to experience an alternate shirt color, alternate pants color or alternate shoe color. *If* Aveda offered those VTO features, *could* biometric identifiers or information be extracted from such images if the images included the customer's face? Of course. Is there a reasonable basis to believe, without additional facts, that they *would be* captured? Of course not; that would be mere speculation. Plaintiffs

---

[6] Searching for a plausible fact to allege, Plaintiff disingenuously alleges that Aveda "admitted" that it "collect[s] biometric data from consumers who use its virtual 'Try-On' feature." ¶¶ 11–12. This is untrue on its face. Aveda's privacy policy, on which Plaintiff relies, explains that Aveda may collect a person's "physical characteristics, such as [their] hair type and color, skin type, and eye color." *Privacy Policy*, Aveda Corp., https://www.aveda.com/customer-service-privacy (last visited Dec. 10, 2021). Physical characteristics are not necessarily biometric identifiers or information because they are not unique to an individual such that an individual can be conclusively identified by them. The category of "physical characteristics" is far broader than the narrow and statutorily defined category of biometric identifiers that are unique to individuals and include "a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry." 740 Ill. Comp. Stat. Ann. 14/10

nowhere allege that the only way—or the common way, or the practical way—to offer a VTO platform that allows a user to experience different hair colors is by capturing biometric identifiers or biometric information. Nor could Plaintiffs and counsel do so without violating Rule 11. But that is precisely the factual allegation that would be necessary to move the current Complaint's claims from speculative and conclusory to plausible.

As discussed, in *Rivera*, the plaintiffs there alleged that photos they took on Google phones were uploaded to Google Photos; their facial geometry was scanned; and Google Photos used their ability to identify individuals to organize the photos. Thus, in *Rivera*, it was *plausible* that biometric information was being collected because there had to be a mechanism that allowed Google to distinguish one individual from another in photographs. Here, in contrast, Plaintiffs fail to plead facts to plausibly allege that Aveda was collecting scans of their facial geometry or other biometric features; they are merely speculating that they did so and parroting the statute's (and the *Rivera* complaint's) language. In fact, there is *no need* for Aveda to collect any biometric identifier from its users, nor does it, for purposes of applying a different hair color. Unlike in *Rivera*, Plaintiffs here do not allege, nor could they, that identification of the individual is necessary for Aveda to achieve the result of changing hair color in an image.

A simple experiment confirms that biometric identifiers and information are irrelevant to Aveda's VTO platform. If one accesses Aveda's VTO feature and covers all biometric features, including the entirety of one's face, Aveda's service is unaffected and it still changes the user's hair color.[7] In light of the results of this simple experiment and the failure of Plaintiffs to allege that capturing biometric identifiers or information is a necessary component of Aveda's VTO

---

[7] *Hair Color Ideas*, Aveda Corp., https://www.aveda.com/hair-color-ideas (last visited Dec. 10, 2021)

platform, there is no basis for this Court to find that Plaintiffs have made a plausible allegation that Aveda is collecting biometric identifiers or information at all.

Because Plaintiffs fail to present any plausible allegation that Aveda is collecting any biometric identifiers or information at all, their Section 15(a) and 15(b) claims, each of which depend on allegations about biometric identifiers or information, fail.

### B. Plaintiffs' Section 15(a) claims should be dismissed because they failed to state a claim.

Plaintiffs' Section 15(a) claim should be dismissed because they failed to plausibly allege that Aveda is in possession of their biometric information, as required to state a claim under Section 15(a). Section 15(a) requires "a private entity in possession of biometric identifiers or biometric information" to draft and publish a retention policy and schedule for the biometric identifiers or information which it has in its possession. 740 Ill. Comp. Stat. Ann. 14/15(a). Although "possession" is not defined in BIPA, courts understand it to be the term's "popularly understood meaning," that is, when an entity "exercised any form of control over the data or . . . held the data at [its] disposal." *Heard v. Becton, Dickinson & Co.*, 440 F. Supp. 3d 960, 968 (N.D. Ill. 2020). In *Heard*, the plaintiff sued the manufacturer of a fingerprint scanner alleging, among other things, a violation of BIPA Section 15(a). *Id.* at 962. Chief Judge Pallmeyer dismissed the claim because the plaintiff failed to adequately plead possession. *Id*. at 968. The Court observed that the Complaint "merely parrot[ed] the statutory language," and in only one paragraph did the plaintiff do anything more than that: "that at some time after the hospitals required [the plaintiff] to scan his fingerprint . . . [the defendant] 'subsequently stored [his] fingerprint data in their systems.'" *Id*. Further, the court noted that the plaintiff "did not say whether [the defendant] could freely access the data or even how [the defendant] allegedly received it." *Id*.

9

This case presents allegations similar to those in *Heard*: Plaintiffs' Complaint parrots Section 15(a)'s statutory language, no less than ten times stating, without any supporting factual allegation, that Aveda is "storing" their biometric data.  Compl. ¶¶ 1, 8, 25, 31, 32, 34, 37, 38, 39, 65, 66.  And, also like *Heard*, the Complaint departs from statutory parroting in effectively only one instance: to baselessly accuse Aveda of maintaining a "database of scanned and digitized faces," going so far as to allege that Aveda "admitted" that it "collect[s] biometric data from consumers who use its virtual 'Try-On' feature."  ¶¶ 11–12.  As discussed *supra*, however, this allegation is plainly disingenuous upon cursory review of the Aveda Privacy Policy on which Plaintiffs rely.  Setting aside the falsity of Plaintiffs' allegation, they do not explain how or where Aveda maintained this database, nor plead any facts that might suggest the existence of one.  As also discussed *supra*, Plaintiffs' logical leap from Aveda accepting image uploads to Aveda necessarily possessing a "database of scanned and digitized faces" is a non-sequitur without any factual basis to support the allegation.  "The court is not required to credit rank speculation."  *Heard*, 440 F. Supp. 3d at 969 (*citing Taha v. Int'l Bhd. Of Teamsters, Local 781*, 947 F.3d 464, 469 (7th Cir. 2020)).  As a result, Plaintiffs' Section 15(a) claim should be dismissed.

### C.  Plaintiffs' Section 15(b) claim should be dismissed.

Plaintiffs' Section 15(b) claim should be dismissed because the Complaint fails to allege with sufficient factual basis whether Aveda collected, captured, or used any biometric identifiers or information of Plaintiffs.  Moreover, even if Aveda had collected Plaintiffs' biometric identifiers or information (it did not), Aveda would have satisfied Section 15(b)'s requirements.  Section 15(b) requires a private entity that "collect[s], capture[s], purchase[s], receive[s] through trade, or otherwise obtain[s]" someone's biometric identifiers or information to inform the person of the

fact of the collection, inform the person of the term and purpose of the collection, and receive a written release.  740 Ill. Comp. Stat. Ann. 14/15(b).

### 1.  Plaintiffs have not stated a claim under Section 15(b) of BIPA.

As this court has observed, "[t]here is no violation of Section 15(b) without collection; unlike Section 15(a), a failure to disclose information is not itself a violation. Section 15(b) is violated only where there is both a failure to provide specific information about [the] collection of biometric data and collection of that data." *Cothron v. White Castle System, Inc.*, 477 F. Supp. 3d 723, 732 (N.D. Ill. 2020).

Critically, Section 15(b)'s requirements relating to the "collection" or "capture" of biometric data are triggered only if the defendant took "an active step to 'collect, capture, purchase, receive through trade, or otherwise obtain' biometric data." *Heard*, 440 F. Supp. 3d at 966; *Jacobs v. Hanwha Techwin Am., Inc.*, 2021 WL 3172967, at *2–3 (N.D. Ill. July 27, 2021) (Section 15(b) "applies only to entities that 'actively' collect" biometric data).  Thus, a defendant must have engaged in "an affirmative act of collection," and a plaintiff must plead "how" and "when" such an act occurred.  *Heard*, 440 F.Supp.3d at 966.  Moreover, BIPA does not prohibit collection of photographs, so long as no biometric identifiers or information are derived from that photograph. 740 Ill. Comp. Stat. Ann. 14/10.  Thus, any claim that merely alleges that photographs were collected fails to state a claim.  *Id.*

As discussed above, the Complaint offers only speculative and conclusory allegations that Aveda "captured" biometric identifiers or information, stating over and over again, without any supporting factual allegations, that Aveda captured biometric information.   "[R]epeatedly alleg[ing] that defendant 'collected' [Plaintiff's and unspecified others'] biometric data without alleging how, when, or any other factual detail," is conclusory and insufficient to support a claim upon which relief can be granted.  *Heard*, 440 F. Supp. 3d at 966.  Plaintiffs' sheer speculation

that biometric identifiers or information may have been "stored" in an unspecified database by Aveda likewise fails to state a plausible claim under Rule 15(b). *See Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (plaintiffs pursuing relief under BIPA must provide at least "some specific facts to ground those legal claims"). "[M]ere conclusory statements" do not satisfy Rule 8(a). *Iqbal*, 556 U.S. at 678. Yet, the Complaint only alleges storage in conclusory fashion. *See* Compl. ¶ 67 ("By . . . storing . . . Plaintiffs' and the Class's biometric identifiers . . . Defendant violated Plaintiffs' and the Class's rights to privacy"). Plaintiffs' Complaint boils down to an allegation that because Aveda invited individuals to upload images to their website, which may have been stored up to 24 hours, then Aveda must have done face scans and collected biometric identifiers or information. But, again, Plaintiffs offer no facts to support any allegation that Aveda did, in fact, collect biometric identifiers or information.

Further, Plaintiffs' logical leap is incompatible with BIPA itself. BIPA expressly exempts photographs from its definition of biometric information, and by extension, biometric identifiers. 740 Ill. Comp. Stat. Ann. 14/10. If the mere allegation that a defendant accepted or collected photographs were sufficient to state a claim under BIPA, then the statute's exclusion of photographs as biometric information would be meaningless. In other words, a plaintiff needs to plead something more than mere collection or possession of photographs. Here, Plaintiffs have failed to do so.

### 2. Plaintiffs' Complaint confirms that Aveda complied with Section 15(b).

Even if Plaintiffs adequately alleged that Aveda collected their biometric identifiers or information (they did not), the Complaint itself recognizes that Aveda would, in fact, have complied with Section 15(b). Section 15(b) requires that an entity collecting biometric data do four things: inform the individual of the fact of collection; inform the individual of the purpose of collection; inform the individual of the duration of retention; and receive a written release. 740

Ill. Comp. Stat. Ann. 14/15(b). The Complaint admits that Aveda satisfied these four requirements. Specifically, it states that Plaintiffs were brought to a screen including the following language "in order to access" Aveda's VTO Platform:

> "[b]y taking or uploading your photo, you agree that Aveda will use your photo for the purpose of providing you your virtual look and product recommendations. Your photo will be retained for up to 24 hours and may be transferred outside your country of residence during that time. For more information about our privacy practices, the contact details of the data controllers, your rights and how to exercise these rights, please see our Privacy Policy."

Compl. ¶ 26. The above includes all four elements of Section 15(b) compliance: the fact of collection; the purpose of collection; the time of collection; and Plaintiffs' assent to the agreement by using the Virtual Try-On Platform. Accordingly, Plaintiffs' Section 15(b) claim should be dismissed because the Complaint itself pleads compliance.

## III. Alternatively, this case should be stayed pending the resolution of certain appeals.

Finally, even in the absence of an arbitration requirement and even if the Complaint stated a plausible claim for relief, this case should be stayed pending the resolution of two pending appeals that could result in modification or dismissal of Plaintiffs' claims and the claims of putative class members. In 2020, the Illinois Appellate Courts for the First Judicial District and the Third Judicial District each granted petitions for interlocutory appeals to determine whether BIPA claims are governed by a one-year, two-year, or five-year statute of limitations. *See Tims v. Black Horse Carriers, Inc.*, No. 1-20-0562 (Ill. App. Ct. 1st Dist.); *Marion v. Ring Containers Techs., LLC*, Case No. 20-0184 (Ill. App. Ct. 3d Dist.). Although *Tims* has been decided, *Marion* is still pending.

On November 9, 2020, the U.S. Court of Appeals for the Seventh Circuit granted a petition for interlocutory appeal, pursuant to 28 U.S.C. § 1292(b), that will address when Section 15(b) claims accrue. *See Cothron v. White Castle Sys., Inc.*, No. 19-cv-00382, Dkt. 141 (N.D. Ill. Oct.

1, 2020).  The *Cothron* appeal is fully briefed, and argument took place on September 14, 2021.  *See Cothron v. White Castle Sys., Inc.*, No. 20-3202, Dkt. No. 64 (7th Cir. July 27, 2021).

This Court "has broad discretion to stay proceedings as an incident to its power to control its own docket."  *Clinton v. Jones*, 520 U.S. 681, 706 (1997); *see also Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants."); *Munson v. Butler*, 776 F. App'x 339, 342 (7th Cir. 2019).  Courts in this Circuit often consider three main factors in deciding whether to stay an action: "(i) whether a stay will unduly prejudice or tactically disadvantage the non-moving party, (ii) whether a stay will simplify the issues in question and streamline the trial, and (iii) whether a stay will reduce the burden of litigation on the parties and on the court."  *E.E.O.C. v. Fair Oaks Dairy Farms, LLC*, No. 2:11-cv-265, 2012 WL 3138108, at *2 (N.D. Ill. Aug. 1, 2012) (quoting *Abbott Lab'ys v. Matrix Lab'ys, Inc.*, No. 09-cv-1586, at *2 (N.D. Ill. Nov. 5, 2009).  Here, all three of these factors strongly weigh in favor of entering a stay pending the outcome of appeals that could have a significant, potentially dispositive effect on this lawsuit.

Here,  a stay would not prejudice Plaintiffs because the decisions of the appellate courts are likely to be handed down in the relatively near term.  Moreover, a stay pending the outcome of *Marion*  and *Cothron* would simplify the issues and lessen the burden for the Court and parties.  The Illinois Appellate Court will determine whether the statute of limitations applicable to Plaintiffs' claims is one, two, or five years; and any determination would necessarily affect at a minimum the size of the putative class and amount of possible recovery by both the putative class and Plaintiffs.  Further, the Seventh Circuit's decision in *Cothron* would drastically affect the scope of potential liability under BIPA's statutory damages provision.  Specifically, *Cothron*

14

would determine when a Section 15(b) or Section 15(d) claim accrues, and whether a violation of those two sections occurred every time a defendant allegedly collected a plaintiff's biometric information. If the Seventh Circuit determines that Plaintiffs' alleged Section 15(b) claims accrued only the *first time* Aveda allegedly collected their biometric information—instead of each time during the period—Aveda could only be held liable for a single violation of each section, and the clock on their claims would have started running much earlier.

Here, resolution of the issues in *Marion* and *Cothron* would have a significant effect on the size and scope of the putative class and Plaintiffs' claims. Granting a stay pending the outcome of *Marion* and *Cothron* would streamline these issues and make litigation in this action more efficient for the Court and the parties alike.

## CONCLUSION

For the foregoing reasons, Aveda respectfully requests that this Court dismiss Plaintiffs' Complaint in favor of arbitration pursuant to Rule 12(b)(3) or for failure to state a claim pursuant to Rule 12(b)(6) with prejudice because amendment would be futile; or, in the alternative stay this matter.

Dated: December 10, 2021                                Respectfully Submitted,

                                                        */s/ Torsten M. Kracht*
                                                        Torsten M. Kracht
                                                        N.D. Ill. Bar No. 501905
                                                        Hunton Andrews Kurth LLP
                                                        2200 Pennsylvania Ave. NW
                                                        Washington, DC 20037
                                                        (202) 419-2149

                                                        ***Attorneys for Aveda Corporation***

15

<u>**CERTIFICATE OF SERVICE**</u>

I certify that on December 10, 2021, I filed the foregoing through the Court's CM/ECF system, which provided simultaneous service to all counsel of record.

Dated: December 10, 2021                                      Respectfully Submitted,

<u>*/s/ Torsten M. Kracht*</u>
Torsten M. Kracht
N.D. Ill. Bar No. 501905
Hunton Andrews Kurth LLP
2200 Pennsylvania Ave. NW
Washington, DC 20037
(202) 419-2149

***Attorneys for Aveda Corporation***