**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| CHERI CLARKE, JAY VYAS, and BRITTANY FERGUSON, individually and on behalf of all others similarly situated, | |
| Plaintiffs, | Case No. 1:21-cv-04185 |
| v. | Hon. Mary M. Rowland |
| AVEDA CORPORATION, | |
| Defendant. | |

## <u>PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTON TO DISMISS</u>

## TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................ 1

II.    LEGAL STANDARD ......................................................................................... 1

III.   ARGUMENT ..................................................................................................... 2

    A.   Facial Scans Are Biometric Identifiers Under BIPA, and Plaintiffs Have Alleged Aveda's Collection and Retention of Biometric Identifiers and Biometric Information.... 2

    B.   The Data Aveda Collects Can Be Used to Identify Individuals ........................................ 4

    C.   Aveda's BIPA Violations Took Place Primarily and Substantially in Illinois ................. 7

    D.   Plaintiffs Plausibly Allege Aveda "Collected" and "Obtained" Their Biometric Identifiers in Violation of BIPA Section 15(b) .................................................................. 9

    E.   Plaintiffs Plausibly Allege Aveda's "Possession" of Their Biometric Identifiers in Violation of BIPA Section 15(a) ...................................................................................... 12

    F.   Plaintiffs Seek Leave to Amend Their Third Count for Violation of BIPA Section 15(d) ................................................................................................................... 14

    G.   Plaintiffs' Request for Enhanced Statutory Damages is Proper ...................................... 14

IV.   CONCLUSION ................................................................................................. 15

# **TABLE OF AUTHORITIES**

**CASES**                                                                                                      **PAGE(S)**

*Carpenter v. McDonald's Corp*.,
  580 F. Supp. 3d 512 (N.D. Ill. 2022) ........................................................................ 3

*Daichendt v. CVS Pharmacy, Inc.*,
  No. 22 CV 3318, 2022 WL 17404488 (N.D. Ill. Dec. 2, 2022) ................................. 4

*Derfus v. City of Chicago*,
  42 F. Supp. 3d 888 (7th Cir. 2014) ........................................................................... 1

*Figueroa v. Kronos Inc.*,
  454 F. Supp. 3d 772 (N.D. Ill. 2020) ...................................................................... 15

*Hazlitt v. Apple, Inc.*,
  543 F.Supp 3d 643 (S.D. Ill. 2021) ........................................................................... 4

*Heard v. Becton, Dickinson, & Co.*,
  440 F. Supp. 3d 960 (N.D. Ill. 2020) ...................................................................... 13

*In re Facebook Biometric Info. Priv. Litig.*,
  326 F.R.D. 535 (N.D. Cal. 2018) ............................................................................... 8

*Jones v. Butler*,
  663 F. App'x 468 (7th Cir. 2016) ............................................................................ 15

*King v. PeopleNet Corp.*,
  No. 21-2774, 2021 WL 5006692 (N.D. Ill. Oct. 28, 2021) ......................................... 5

*Kukovec v. Estee Lauder Cos., Inc.*,
  No. 22 CV 1988, 2022 WL 16744196 (N.D. Ill. Nov. 7, 2022) ......................... 11, 12

*Kyles v. Hoosier Papa LLC*,
  No. 1:20-CV-07146, 2023 WL 2711608 (N.D. Ill. Mar. 30, 2023) ......................... 15

*Mahmood v. Berbix, Inc.*,
  No. 22 C 2456, 2022 WL 3684636 (N.D. Ill. Aug. 25, 2022) ....................... 6, 12, 15

*McGoveran v. Amazon Web Servs., Inc.*,
  2021 WL 4502089 (D. Del. Sept. 30, 2021) .............................................................. 9

*Melzer v. Johnson & Johnson Consumer Inc.*,
  2023 WL 3098633 (D.N.J. Apr. 26, 2023) ...................................................... 4, 5, 12

*Naughton v. Amazon.com, Inc.*,
  No. 20-CV-6485, 2022 WL 19324 (N.D. Ill. Jan. 3, 2022) (Rowland, J.) ......... 13, 14

iii

*Neals v. PAR Tech. Corp.*,
　419 F. Supp. 3d 1088 (N.D. Ill. 2019) ................................................................. 7

*Patterson v. Respondus, Inc.*,
　No. 20 C 7692, 2022 WL 860946 (N.D. Ill. Mar. 23, 2022) .................................... 13

*People v. Olsson*,
　958 N.E.2d 356 (Ill. App. 2d 2011) ...................................................................... 2

*Platt v. Brown*,
　872 F.3d 848 (7th Cir. 2017) ............................................................................... 2

*Powell v. Shiseido Americas Corp.*,
　2022 WL 19914948 (C.D. Ill. Aug. 22, 2022) ....................................................... 5

*Pruitt v. Par-A-Dice Hotel Casino*,
　No. 1:20-CV-1084-JES-JEH, 2020 WL 5118035 (C.D. Ill. Aug. 31, 2020) .............. 10

*Rivera v. Google Inc.*,
　238 F. Supp. 3d 1088 (N.D. Ill. 2017) .......................................................... 2, 3, 7, 8

*Roberson v. Maestro Consulting Servs.*,
　507 F. Supp. 3d 998 (S.D. Ill. 2020) ..................................................................... 5

*Rogers v. BNSF Ry. Co.*,
　No. 19 C 3083, 2019 WL 5635180 (N.D. Ill. Oct. 31, 2019) .................................. 15

*Rogers v. CSX Intermodal Terminals, Inc.*,
　409 F. Supp. 3d 612 (N.D. Ill. 2019) ................................................................... 15

*Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*,
　786 F.3d 510 (7th Cir. 2015) ............................................................................... 2

*Skaperdas v. Country Cas. Ins. Co.*,
　28 N.E.3d 747 (Ill. 2015) ...................................................................................... 3

*Smith v. Signature Sys., Inc.*,
　No. 2021-CV-02025, 2022 WL 595707 (N.D. Ill. Feb. 28, 2022) (Rowland, J.) ........ 7

*Sosa v. Onfido, Inc.*,
　600 F. Supp. 3d 859 (N.D. Ill. 2022) ........................................................... 2, 3, 15

*Vance v. Amazon.com, Inc.*,
　525 F. Supp. 3d 1301 (W.D. Wash. 2021) .............................................................. 7

*Vance v. Microsoft Corp.*,
　2022 WL 9983979 (W.D. Wash. Oct. 17, 2022) .................................................... 9

iv

*Wilk v. Brainshark, Inc.*,
2022 WL 4482842 (N.D. Ill. Sept. 27, 2022) ........................................................ 2, 12

*Wordlaw v. Enter. Leasing Co. of Chicago,*
2020 WL 7490414 (N.D. Ill. Dec. 21, 2020) (emphasis added) ............................... 13

## **STATUTES**

740 ILCS 14/10 .......................................................................................................... 1, 2, 4

740 ILCS 14/15(b) ........................................................................................................... 9

740 ILCS 14/20(2) ......................................................................................................... 14

## **RULES**

Fed. R. Civ. P. 12(b)(6) ................................................................................................... 1

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

Defendant Aveda Corporation's ("Aveda") motion is an unwarranted attempt to have the Court rewrite, and drastically curtail, the broad protections of the Illinois Biometric Information Privacy Act 740 ILCS 14/1, *et seq.*, ("BIPA"). BIPA gives Illinois residents, like Plaintiffs and class members, a right to privacy in and control over their biometric identifiers. BIPA defines "biometric identifiers" as "fingerprints, retina or iris scans, voiceprints, or scans of hand or face geometry." 740 ILCS 14/10. BIPA's privacy rights include the right to say no to the collection, possession, and dissemination of this data. 740 ILCS 14/15(a)-(d). Aveda operates an augmented reality "Try-On" tool in which users can superimpose different hair colors on themselves. Compl. ¶¶ 9-10. In order to use the Try-On tool, users must either turn on and use a live camera or upload a picture of themselves, at which point Aveda's application scans the users' face and applies the selected color to the users' hair. *Id.* Through this Try-On tool, Aveda violated Plaintiffs' privacy rights because, without informed written consent, Aveda "scanned and collected, and then stored in an electronic database" digital scans of Plaintiffs' unique "facial geometry"—*i.e.*, biometric identifiers by statute. *Id.* ¶¶ 25-34, 37-44. Aveda also unlawfully collected Plaintiffs' biometric identifiers without first establishing and following a publicly available policy concerning its collection and storage of biometric data, and disseminated the data to its affiliates and third parties. *See id.* ¶¶ 35, 45. Plaintiffs' Complaint pleads facts—which must be taken true for the purposes of deciding a 12(b)(6) motion—that more than plausibly allege Aveda violated BIPA.

## II.  LEGAL STANDARD

The purpose of a Rule 12(b)(6) motion to dismiss is to test the legal sufficiency of the complaint, not decide the merits of the case. *Derfus v. City of Chicago*, 42 F. Supp. 3d 888, 893 (7th Cir. 2014). For purposes of a motion to dismiss, the Court accepts "as true all of the well-

pleaded facts in the complaint and draws all reasonable inferences in favor of the plaintiff." *Platt v. Brown*, 872 F.3d 848, 851 (7th Cir. 2017). "[A]ll this means is that the plaintiff must include enough details about the subject-matter of the case to present a story that holds together. At this pleading stage, we do not ask whether these things actually happened; instead, the proper question to ask is still could these things have happened." *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 526 (7th Cir. 2015) (internal quotation marks and citation omitted).

## III.  ARGUMENT

### A.  Facial Scans Are Biometric Identifiers Under BIPA, and Plaintiffs Have Alleged Aveda's Collection and Retention of Biometric Identifiers and Biometric Information

Aveda's attempts to narrow the protections afforded by BIPA are unavailing and should be rejected. Aveda violated Plaintiffs' rights the moment it collected and stored their unique physical features. *Rivera v. Google Inc*., 238 F. Supp. 3d 1088, 1093 (N.D. Ill. 2017) (noting BIPA prohibits "non-consensual gathering and collecting" of "biometrics"). BIPA explicitly defines a biometric identifier to include a "***scan** of hand or **face geometry**.*" 740 Ill. Comp. Stat. Ann. 14/10 (emphasis added); *see also Wilk v. Brainshark, Inc*., 2022 WL 4482842, at *5 (N.D. Ill. Sept. 27, 2022) (same). Despite this unambiguous text, Aveda asks the Court to insert additional language into the definition of "biometric identifier"—i.e., that a scan of face geometry must also "actually identify or be used to identify a person" (Mot. at 4)—while citing case law explaining that a biometric identifier need only be "capable" of identification. Aveda's argument fails for several reasons.

First, "[w]hen an act defines its own terms, those terms must be construed according to the definitions given to them in the statute." *Sosa v. Onfido, Inc*., 600 F. Supp. 3d 859, 870 (N.D. Ill. 2022) (quoting *People v. Olsson*, 958 N.E.2d 356, 359 (Ill. App. 2d 2011)). BIPA ***clearly defines*** the term "biometric identifier" and the inquiry into the term's meaning ends there. Aveda's selective quoting from the BIPA statute to suggest that the statutory definition of "biometric

identifier" includes the phrase "used to identify" does not make it so. Mot. at 4. The attempt to give the phrase "biometric identifier" a new meaning based on the purported "plain and ordinary meaning" of the word "identifier," Mot. at 4-5, also fails. Only "[u]ndefined terms in the statute" are "given their ordinary and popularly understood meaning." *Skaperdas v. Country Cas. Ins. Co.*, 28 N.E.3d 747, 751 (Ill. 2015).

Second, Aveda's argument confuses the ***capacity*** to identify an individual with the ***actual identification*** of an individual. Mot. at 6 ("If the data in question . . . is not used to recognize a person's identity, BIPA does not . . . apply."). The unique physical characteristics enumerated in BIPA's definition of "biometric identifiers," including a "scan of . . . face geometry," represent things that are static and exclusive to a person, *i.e.*, something that necessarily can be used to identify a unique individual, not something that must identify an individual. *Carpenter v. McDonald's Corp*., 580 F. Supp. 3d 512, 515 (N.D. Ill. 2022) ("a biometric identifier is a unique personal feature that can be used to identify a person"); *Sosa*, 600 F. Supp. 3d at 871 (collecting cases and noting "[t]he faceprints extracted by Onfido plausibly constitute scans of face geometry and, therefore biometric identifiers"). As the court in *Rivera* makes clear:

> [T]he Privacy Act defines "biometric identifier" with the ***complete*** set of ***specific*** qualifying biometric identifiers. Each specific item on the list, not surprisingly, fits within the meaning of the term "biometric identifier," that is, a biology-based set of measurements ("biometric") that can be used to identify a person ("identifier").

238 F. Supp. 3d at 1094 (emphasis in original). Any attempt to redefine "biometric identifier" as anything other than a unique physical characteristic, including a "scan of … face geometry," is supported neither by the text of the statute nor Aveda's own authorities.[1] Allegations that Aveda

---

[1] Aveda cites to and quotes *Carpenter* and *Rivera*—which both say a biometric identifier is something that "can be used to identify a person"—for a proposition found in neither of those cases, namely, that a biometric identifier must actually identify a person, and that a "scan of hand

scanned Plaintiffs' facial geometry, which can be used to identify them, state a claim under BIPA.

**B.      The Data Aveda Collects Can Be Used to Identify Individuals**

Aveda also argues that Plaintiffs failed to allege the data collected "can be used" to identify individuals. According to Aveda, it has no way of connecting the "scans of facial geometry to [Plaintiffs'] individual identities" because Plaintiffs never provided Aveda with their names, addresses, or phone numbers. Mot. at 7-8. This argument fails for multiple reasons.

First, requiring that a tool actually suggest individuals' names or contact information is just another attempt to smuggle in a nonexistent requirement that biometric data actually be used to identify individuals. BIPA simply does not impose such a requirement. *See Hazlitt v. Apple, Inc*., 543 F.Supp 3d 643, 646 (S.D. Ill. 2021) (holding that plaintiff sufficiently pled "possession" of biometric identifiers without requiring a showing that the defendant used biometric identifiers to identify users). The lone case Aveda relies on for this proposition, *Daichendt v. CVS Pharmacy, Inc*., No. 22 CV 3318, 2022 WL 17404488 (N.D. Ill. Dec. 2, 2022), is an outlier that internally cited no controlling authority. Mot. at 7 (arguing "names" or "addresses" are necessary).

The reasoning in *Melzer v. Johnson & Johnson Consumer Inc.*, 2023 WL 3098633 (D.N.J. Apr. 26, 2023)—which considered *Daichendt*—is illustrative. At issue was Johnson & Johnson's "Skin360" technology that provides consumers with a "personalized at-home skin assessment" by scanning a consumer's face using selfie cameras and analyzing the facial scan to diagnose skin health issues. *Id.*, at *1. Johnson & Johnson argued that Skin360 does not collect "biometric identifiers" which require that the data collected "be used to identify an individual." *Id.*, at *3. The court disagreed. "[B]ased on existing case law and statutory interpretation, BIPA does not require that a 'biometric identifier' be used to identify an individual." *Id*. Indeed, "[a] commonsense

or face geometry" as enumerated in 740 Ill. Comp. Stat. Ann. 14/10 is not necessarily a biometric identifier. Mot. at 5.

interpretation, as other courts have found, compels a finding that the facial scans captured and collected by Skin360 fall within BIPA's definition of a 'biometric identifier,' which explicitly includes a scan of facial geometry—a term that this Court views as ***unambiguously clear***." *Id.* (collecting cases). Critically, "courts have consistently found that BIPA's omission of the 'used to identify' condition in the 'biometric identifier' definition was intentional and thus renders the definition distinct from that of 'biometric information' [which is separately defined]." *Id.*

So too here. Aveda collects scans of Plaintiffs' facial geometry—again, an enumerated "biometric identifier" under BIPA—without obtaining informed written consent. And in the context of BIPA, "all [p]laintiffs must do is allege that [d]efendants collected, captured, purchased, received or obtained their [biometric identifier] without complying with BIPA's requirements." *Roberson v. Maestro Consulting Servs.*, 507 F. Supp. 3d 998, 1018 (S.D. Ill. 2020); *see also King v. PeopleNet Corp.*, No. 21-2774, 2021 WL 5006692, at *8 (N.D. Ill. Oct. 28, 2021) (same).

Second, even assuming (incorrectly) that facial scans must be "used to identify an individual," the data need not include a name or contact information to identify an individual. For example, the Skin360 tool in *Meltzer* "extracts and creates a unique identifier in the form of a faceprint" and "computers can store this information and use it to identify that individual, including any other time that person's face appears on the internet or in public." *Melzer*, 2023 WL 3098633, at *3-4. The uniquely identifying nature of the facial scan, standing alone, was a BIPA violation. Moreover, *Powell v. Shiseido Americas Corp.*, 2022 WL 19914948, at *6 (C.D. Ill. Aug. 22, 2022) denied a similar motion to dismiss, finding plausible allegations that a virtual make-up tool created a geometric map of the user's face in a way that amounted to biometric identifiers under BIPA. The "allegation that such a map was created through [d]efendant's website amounts to a plausible allegation that [d]efendant actively captured and/or collected biometric identifiers." *Id.*

Here, too, a biometric identifier is any personal feature that is "unique to an individual." Compl. ¶¶ 1-2. Aveda collected, stored and used Plaintiffs' "facial geometry and associated personally identifying information" through its try-on tool (i.e., scanning live video or uploaded pictures). *Id.* ¶¶ 8-11, 25, 37-39. And this facial scan data is "unique" to each Plaintiff. *Id.* ¶¶ 12, 41-44. Lest there be doubt, buried in Aveda's Privacy Policy is an effective admission that Aveda collected biometric information. Compl. ¶¶ 11, 29, 30. The version of Aveda's Privacy Policy updated June 30, 2020 states, under the heading "INFORMATION WE COLLECT," that "We may collect or may have collected the following categories of information about you . . . **Biometric information**, such as facial images (for example, if you use one of our make-up try on applications)." Klinger Decl. Ex. A at 9 (emphasis in original).[2] Critically, Aveda's current Privacy Policy—updated just weeks ago on April 21, 2023—is even more direct. Now, under the heading "INFORMATION WE PROCESS," Aveda states it "may collect or process . . . **Biometric information**," Klinger Decl. Ex. B at 12 (emphasis in original)[3], "such as *facial geometry* if you use *certain* of our *virtual try-on applications*." *Id.* (emphasis added). And as courts have held, admissions in a company's own privacy policy are sufficient to plead a BIPA violation beyond a speculative level. *Mahmood v. Berbix, Inc.*, No. 22 C 2456, 2022 WL 3684636, at *3 (N.D. Ill. Aug. 25, 2022) ("Berbix's privacy policy, which Mahmood referenced in her complaint and attached to her response brief, states Berbix may share personal and identity information and data with third parties. As such, Mahmood has plausibly alleged her § 15(d) claim.").

Accordingly, Plaintiffs plausibly allege that Aveda collected biometric information which

---

[2] *Aveda United States Privacy Policy* (updated June 30, 2020), available at https://web.archive.org/web/20210412000545/https://www.aveda.com/customer-service-privacy.
[3] *Aveda United States Privacy Policy* (updated April 21, 2023), available at https://web.archive.org/web/20230506060920/https://www.aveda.com/customer-service-privacy.

can be used to identify them. To the extent Aveda draws different inferences from these well-pleaded facts, Mot. at 7-8, the Motion must be denied. And should the Court find Plaintiffs' allegations deficient, Plaintiffs respectfully request leave to more directly allege that Aveda's unique facial geometry scans "can be used to identify" them, consistent with *Meltzer* and *Shiseido*.

### C.    Aveda's BIPA Violations Took Place Primarily and Substantially in Illinois

As a threshold matter, the determination of the locus of Plaintiffs' claims for purposes of the extraterritoriality inquiry is fact-intensive. "Courts in this district acknowledge that such a determination is 'generally inappropriate for the motion to dismiss stage' and requires discovery." *Smith v. Signature Sys., Inc.*, No. 2021-CV-02025, 2022 WL 595707, at *3 (N.D. Ill. Feb. 28, 2022) (Rowland, J.); *Vance v. Amazon.com, Inc*., 525 F. Supp. 3d 1301, 1308 (W.D. Wash. 2021) ("*Vance I*") (collecting cases). Aveda concedes the fact-bound nature of the extraterritoriality inquiry. Mot. at 10 n.4. Even if the Court were to engage in a factual inquiry now, however, the Complaint ties Aveda's misconduct to Illinois beyond the mere fact that Plaintiffs reside there.

A BIPA violation must have taken place in Illinois to be actionable. *See Rivera*, 238 F. Supp. 3d at 1100-01. There is no bright-line test for making this determination. Rather, "a court must analyze whether 'the circumstances relating to the transaction occur primarily and substantially' within Illinois." *Id.* at 1101. Aveda asserts that the Complaint does not allege any conduct by Aveda in Illinois. Mot. at 9. This is wrong. First, the argument is a red herring, since the extraterritoriality inquiry broadly looks to the totality of the actions of both the plaintiff and the defendant that precipitate the dispute. *See Rivera*, 238 F. Supp. 3d at 1101-02 (analyzing "whether the circumstances relating to the transaction occur primarily and substantially within Illinois[,]" and stating that "[e]ven if we do definitely determine that the scanning takes place outside of Illinois, that would not necessarily be dispositive"); *see also Neals v. PAR Tech. Corp.,* 419 F. Supp. 3d 1088, 1091 (N.D. Ill. 2019) (Defendant's "physical location and property holdings,

the location of its servers, and the identity of its customers are not determinative of [BIPA's] application; these factors have little to do with the transaction and conduct at issue – the collection of plaintiff's fingerprint."). Second, Plaintiffs do allege Aveda's conduct occurred within Illinois.

Here, Plaintiffs allege: (a) Plaintiffs are residents and citizen of Illinois; (b) all proposed Class members are residents of Illinois; (c) Aveda is registered to do business in Illinois; (d) Plaintiffs and all proposed Class members accessed, and uploaded images and video to, Aveda's Try-On tool from Illinois; (e) Aveda collected, captured, and used Plaintiffs' and Class members' biometric identifiers in Illinois; (f) Aveda failed to post a publicly available retention schedule and guidelines for permanently destroying biometric identifiers in Illinois; (g) Aveda failed to comply with any such publicly available retention schedule and guidelines for permanently destroying biometric identifiers in Illinois; and (h) Aveda intended for its Try-On tool to be used on the internet, which includes Illinois. Compl. ¶¶ 8-15, 16, 18-21, 32-35, 38-45, 54-57, 62-67.

These allegations explicitly involve Illinois conduct on the part of Aveda. Equally important, the totality of Plaintiffs' and Aveda's actions establish a BIPA violation that took place primarily and substantially in Illinois. These allegations are just as robust as the facts found sufficient in similar cases. *In re Facebook Biometric Info. Priv. Litig.*, 326 F.R.D. 535, 547 (N.D. Cal. 2018) (case was "deeply rooted in Illinois" when, among other things, "[t]he named plaintiffs are located in Illinois along with all of the proposed class members, and the claims are based on the application of Illinois law to use of Facebook mainly in Illinois"); *Rivera*, 238 F. Supp. 3d at 1101-02 (holding on motion to dismiss that "Plaintiffs sufficiently allege facts that would deem the asserted violations as having happened in Illinois" where Google was "making face templates of [plaintiffs] in photographs uploaded automatically from Google Droid devices in Illinois").

Aveda urges the Court to follow *McGoveran v. Amazon Web Servs., Inc.*, 2021 WL

4502089 (D. Del. Sept. 30, 2021). But *McGoveran* is inapposite. There, the plaintiffs' **sole basis** for their alleged BIPA violation was their Illinois residency. *See McGoveran*, 2021 WL 4502089, at *4 (stating that plaintiffs' allegations contained "nothing more than repeated statements (phrased three different ways) about Plaintiffs' residency"). The plaintiffs did not "allege any direct interaction with [the defendants] that might plausibly be imputed to Illinois[.]" *Id.* at *5. The *McGoveran* court held that was not enough, and dismissed without prejudice. *See id.* at *6.

On the other hand, *In re Facebook Biometric Info. Priv. Litig.* and *Rivera* are far different from *McGoveran*. Another case cited by Aveda, *Vance v. Microsoft Corp.*, 2022 WL 9983979, at *7 (W.D. Wash. Oct. 17, 2022) ("*Vance II*"), illustrates the distinction:

> In [*In re Facebook Biometric Info. Priv. Litig.*], for example, the plaintiff Illinois residents uploaded their photos to Facebook's social media service in Illinois. Facebook then scanned the photos, identified the individuals in those photos, and suggested names of individuals to tag in those photos. Thus, Facebook reached into Illinois by providing its service to the plaintiffs, and the plaintiffs' direct interactions with Facebook gave rise to the alleged BIPA violations.

This is precisely what Plaintiffs allege. Again, they are residents of Illinois and uploaded videos and photos to Aveda's Try-On tool from within Illinois. Compl. ¶¶ 18-20, 36-40. Aveda then "scanned" their faces, and used those faces in its Try-On tool. *Id.* Thus, Aveda "reached into Illinois by providing [their] service to [Plaintiffs], and [Plaintiffs'] direct interactions with [Aveda] gave rise to the alleged BIPA violations." *Vance II*, 2022 WL 9983979, at *7.

### D. Plaintiffs Plausibly Allege Aveda "Collected" and "Obtained" Their Biometric Identifiers in Violation of BIPA Section 15(b)

Section 15(b) prohibits private entities from "collecting, capturing, purchasing, receiving through trade, or otherwise obtaining" a customer's biometric data unless three conditions are met, which Plaintiffs allege were not met. 740 ILCS 14/15(b). The Complaint alleges facts plausibly supporting the inference that Aveda violated Section 15(b) by collecting Plaintiffs' biometric data without making the requisite disclosures or obtaining written consent. Aveda largely restates the

same arguments and maintains that Plaintiffs rest on "buzzwords and conclusory allegations" and "extraordinary" leaps in logic, and are "unable to specifically allege how the Virtual Hair Color Tool collects . . . biometric information." Mot. at 12-13. In so doing, Aveda apparently advocates for an ultra-heightened pleading standard that requires a lengthy explanation of Aveda's software in granular detail down to the precise technical measurements collected. Aveda is mistaken.

First, on a motion to dismiss, Plaintiffs' description of the technology must be accepted as true. As such, Plaintiffs have plausibly alleged facts constituting Aveda's BIPA violations and facts from which Aveda's violations may be reasonably inferred. The Try-On tool functions by capturing and collecting user biometrics because this capture and collection enables the tool to determine facial characteristics (upon which hairstyles are superimposed), and such measurements are "unique" to the individual. Compl. ¶¶ 9-10, 25, 27-37, 41-44.

Second, Aveda faults Plaintiffs for failing to detail the precise facial geometric measurements taken via the Try-On tool constituting biometric identifiers—facts that are particularly within Aveda's knowledge. *E.g.*, Mot. at 13. At the pleading stage, however, a plaintiff need not allege "specific facts" about how a defendant's technology works to state a BIPA claim, but need only plead enough facts to put the defendant on notice. *E.g., Pruitt v. Par-A-Dice Hotel Casino*, No. 1:20-CV-1084-JES-JEH, 2020 WL 5118035, at *3 (C.D. Ill. Aug. 31, 2020) (defendants were on notice of basis for BIPA claims where plaintiff alleged that defendant conducted facial geometry scans using security cameras without consent). In *Pruitt*, for example, the allegations were skeletal yet deemed sufficient to state a claim. The *Pruitt* plaintiffs only alleged that when they went to defendant's casino, the casino's video-surveillance cameras captured their facial geometry and then compared it to scans in an internal database. *See id.* at *1. Those bare facts were enough because, at that stage in the litigation, plaintiffs did not need to

allege "*how they knew* [d]efendants were conducting facial geometry scans or plead *technical details* about the devices or software used." *Id.* at *3 (emphasis added). As explained, if the defendants were "not using equipment that collects and stores biometric identifiers"—as Aveda claims here—"then it will come to light through discovery." *Id.* at *3.

Citing *Pruitt* with approval, a motion to dismiss BIPA claims brought by Estee Lauder was recently denied for the same reasons. *Kukovec v. Estee Lauder Cos., Inc*., No. 22 CV 1988, 2022 WL 16744196 (N.D. Ill. Nov. 7, 2022). There, the plaintiff alleged she used an online makeup try-on tool that collected her facial-geometry data in violation of BIPA. Estee Lauder moved to dismiss, arguing the complaint "provides only conclusory legal statements" and did not "adequately allege that the try-on tool captured users' facial geometry." *Id.* at *6. The court disagreed with Estee Lauder, finding that plaintiff "present[s] a story that holds together" and "does more than simply parrot the elements of a BIPA claim." *Id.* at *6-7. Specifically, the plaintiff alleged that the tool uses "facial-geometry scans from a user's uploaded picture or live camera" to identify "the shape and features of the user's face in order to accurately overlay the virtual makeup product onto the image provided." *Id.* Critically, "[w]ith that description of the technology, it is *reasonable to infer that collection of biometric data is necessary for it to work*." *Id.* (emphasis added). "And at this stage, the fact that plaintiff's allegations are made on information and belief isn't a problem because those facts 'are peculiarly within the knowledge of the defendants.'" *Id.*

Here, like the plaintiffs in *Pruitt* and *Estee Lauder Companies, Inc.*, Plaintiffs provide an adequate description of the Try-On tool, including what it achieves and how it works (i.e., that facial scans of geometry are a necessary feature of Aveda's Try-On tool which allows consumers to virtually try-on different hair colors, and the resulting measurements are unique to the individual), such that it is "reasonable to infer that collection of biometric data is necessary for it

11

to work." *Estee Lauder Cos., Inc.*, 2022 WL 16744196, at *6-7.

Third, Aveda somewhat incredibly denies admitting in its Privacy Policy that it collects biometric data. Mot. at 13. Aveda references a copy of its Privacy Policy updated on May 21, 2021 (Dkt. 35-1 at 10), which Aveda argues is the version "in effect when Plaintiffs filed their Complaint" (not when Plaintiffs used the tool in May 2020, Compl. ¶ 36) and "does not even mention 'biometrics.'" Mot. at 13. However, for its own strategic reasons, Aveda fails to acknowledge that both the preceding version of its Privacy Policy (updated June 30, 2020), and the current version of its Privacy Policy (updated April 23, 2023), disclose that Aveda collects and processes biometric identifiers. Klinger Decl. Ex. A at 9; *id.* Ex. B at 12. Of note, the current Privacy Policy was apparently revised and broadened to encompass the try-on tool at issue, and specifically mentions "facial geometry." Klinger Decl. Ex. B at 12 ("Information We Process" includes "Biometric information, such as ***facial geometry*** if you use ***certain*** of our ***virtual try-on applications***."). Again, the Privacy Policy and inferences drawn therefrom are more than sufficient to state a claim against Aveda. *Berbix, Inc*., 2022 WL 3684636, at *3 (plaintiff stated BIPA claim based on inferences drawn from defendant's privacy policy). *Meltzer*, 2023 WL 3098633, at *5 (inferences from language on defendant's website supported BIPA claim); *Wilk v. Brainshark, Inc.*, 1-21-CV-4794, 2022 WL 4482842, at *5 (N.D. Ill. Sept. 27, 2022) (defendant's "own marketing and resources confirms that its technology scans videos for facial features.").

Whether Aveda is ultimately correct or incorrect cannot be decided on a motion to dismiss.

### E.    Plaintiffs Plausibly Allege Aveda's "Possession" of Their Biometric Identifiers in Violation of BIPA Section 15(a)

Aveda also contends that, because BIPA Section 15(a) bars a person from "possessing" biometric identifiers without having a publicly available policy, Plaintiffs' failure to use the word "possess" in the Complaint warrants dismissal of the claim. Aveda's own authority refutes this

argument, and the Court should reject it as it has before. Plaintiffs adequately alleged that Aveda "collects" and "obtains" biometric information in violation of Section 15(b), and in so doing, Aveda necessarily "possessed" the biometric information in violation of Section 15(a). *Naughton v. Amazon.com, Inc.*, No. 20-CV-6485, 2022 WL 19324, at *4 (N.D. Ill. Jan. 3, 2022) (Rowland, J.) (". . . by requiring that Naughton submit to scans disclosing his facial geometry, Amazon has taken the requisite 'active step' in ***collecting***, and thus also ***possessing***, the data. Beyond that, Naughton also specifically asserts that Amazon stores his biometric data in a database. This plainly satisfies the 'possession' requirement at the pleadings stage.") (emphasis added).

To be sure, courts have found that "possession" alone is insufficient to trigger a violation of Section 15(b) (i.e., for "collecting" or otherwise "obtaining" biometric identifiers). *Heard v. Becton, Dickinson, & Co*., 440 F. Supp. 3d 960, 966 (N.D. Ill. 2020). This is because "obtaining" biometric identifiers under Section 15(b) requires something more than "possession"—that is, "obtaining" means "to ***bring*** into one's ***own possession***[,] to procure." *Id.* (emphasis added). But Aveda's "collection" of Plaintiffs' facial geometry scans "raises a ***reasonable (and obvious***) inference that once collected, [D]efendant ***possessed***" the biometric identifier. *Wordlaw v. Enter. Leasing Co. of Chicago,* 2020 WL 7490414, at *4 (N.D. Ill. Dec. 21, 2020) (emphasis added); *see also Patterson v. Respondus, Inc*., No. 20 C 7692, 2022 WL 860946, at *24 n. 20 (N.D. Ill. Mar. 23, 2022) (suggesting that "the collection of biometric data necessarily results, at least momentarily, in the possession of that data . . . "). Thus, a party that adequately pleads a defendant "obtained" a biometric identifier or information under Section 15(b), like Plaintiffs here, sufficiently pleads that the defendant also "possesses" the same information under Section 15(a).

Beyond that, Plaintiffs explicitly allege Aveda "***scanned*** and ***collected***, and then ***stored in an electronic database***, digital copies of each consumers' facial geometry during the consumer's

use of Aveda's virtual 'Try-On' feature." Compl. ¶ 25 (emphasis added). Nothing more can conceivably be required to adequately allege possession.

### F. Plaintiffs Seek Leave to Amend Their Third Count for Violation of BIPA Section 15(d)

Section 15(d) prohibits disclosing or disseminating biometric identifiers and information before obtaining consent. The disclosure or dissemination of biometric data to affiliates and third parties is barred by BIPA. *Naughton v. Amazon.com, Inc.*, No. 20-CV-6485, 2022 WL 19324, at *4 (N.D. Ill. Jan. 3, 2022) (Rowland, J.) (sustaining § 15(d) claim based on alleged disclosure to affiliates and third parties without prior consent). A plaintiff is not required to plead detailed factual allegations, including the names of the receiving affiliates and third parties. *Id.* ("Amazon seeks to impose a heightened standard where there is none; all Naughton must plead is 'plausible dissemination.' He has done so here by indicating that Amazon has collected his facial geometry, disclosed that data to 'other Amazon entities' and to 'third-party biometric device and software vendor(s)' and other possible third parties."). Plaintiffs inadvertently restated the allegations for their Section 15(b) claim and request leave to allege that, on information and belief, Aveda disseminated biometric identifiers to affiliates and third-party providers while operating the tool. Indeed, Aveda's current Privacy Policy states: "Biometric information [:] We may disclose or may have disclosed this information to . . . Service Providers." Klinger Decl. Ex. B at 16.

### G. Plaintiffs' Request for Enhanced Statutory Damages is Proper

BIPA authorizes not only statutory damages of $1,000 per violation, but in the alternative, enhanced damages of $5,000 per intentional or reckless violation. 740 ILCS 14/20(2). Aveda improperly seeks dismissal of the request for enhanced statutory damages arguing that Plaintiffs fail to plead recklessness or intent. Mot at 15. A "request for enhanced damages is a demand for relief, not part of a BIPA claim," therefore, a plaintiff "need not allege facts to show she is entitled

14

to this enhanced relief." *Berbix, Inc.*, 2022 WL 3684636, at *3; *Kyles v. Hoosier Papa LLC*, No. 1:20-CV-07146, 2023 WL 2711608, at *7 (N.D. Ill. Mar. 30, 2023) (same); *Figueroa v. Kronos Inc.*, 454 F. Supp. 3d 772, 786 (N.D. Ill. 2020) (same); *Jones v. Butler*, 663 F. App'x 468, 470 (7th Cir. 2016) (demand for relief "is not itself a part of the plaintiff's claim"). Thus, Plaintiffs "need not allege a specific level of culpability to plausibly state [their] BIPA claims because the Act imposes liability regardless of a defendant's state of mind." *Berbix, Inc.*, 2022 WL 3684636, at *3.

In arguing to the contrary, Aveda relies upon *Rogers v. CSX Intermodal Terminals, Inc*., 409 F. Supp. 3d 612, 619 (N.D. Ill. 2019), which found conclusory allegations about the defendant's state of mind insufficient. The court that issued *Rogers*, however, later came to the opposite conclusion in *Sosa*. 600 F. Supp. 3d at 874-75. In so doing, it explicitly acknowledged and rejected its prior reasoning in *Rogers*, noting that "several decisions that we did not consider in *Rogers* (and many of which did not issue until after *Rogers*) have convinced us that our conclusion today is the correct one." *Sosa*, 600 F. Supp. 3d at 874 at n.7. In other words, the court that issued *Rogers* agreed that it had gotten it wrong.

Regardless, Plaintiffs adequately alleged Aveda acted intentionally and recklessly for the reasons above. At minimum, Aveda's knowledge of BIPA is clear from the references to biometrics in its Privacy Policies. And Aveda's knowing failure to comply with statutes enacted years ago is reckless or intentional. *Rogers v. BNSF Ry. Co.*, No. 19 C 3083, 2019 WL 5635180, at *5 (N.D. Ill. Oct. 31, 2019) ("BIPA took effect more than ten years ago, and . . . BNSF has made no effort to comply . . . This is certainly enough . . . to make a claim of . . . recklessness plausible.").

## IV. CONCLUSION

For the foregoing reasons, Aveda's motion should respectfully be denied. If the Court deems any of the claims deficient, Plaintiffs can cure any deficiencies by further amendment as there has been no prior judicial evaluation of the pleadings.

Dated: May 24, 2023                Respectfully Submitted,

*/s/ Gary M. Klinger*
Gary M. Klinger
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, LLC**
221 West Monroe Street, Suite 2100
Chicago, IL 60606
(866) 252-0878
gklinger@milberg.com

***Attorneys for Plaintiffs***

**<u>CERTIFICATE OF SERVICE</u>**

I certify that on May 24, 2023, I e-filed the foregoing through the Court's CM/ECF system, which provided simultaneous service to all counsel of record.

*/s/ Gary M. Klinger*      
Gary M. Klinger
