**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| CHERI CLARKE, JAY VYAS, and BRITTANY FERGUSON *individually and on behalf of all others similarly situated*, | Case No. 1:21-cv-04185 |
| | Hon. Mary M. Rowland |
| Plaintiffs, | **FIRST AMENDED CLASS ACTION COMPLAINT** |
| v. | |
| AVEDA CORPORATION, | |
| Defendant. | |

**FIRST AMENDED CLASS ACTION COMPLAINT**

Plaintiffs Cheri Clarke, Jay Vyas, and Brittany Ferguson, individually and on behalf of all other persons similarly situated, by her undersigned attorneys, as and for her Class Action Complaint for violations of the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1 *et seq*., against Defendant AVEDA CORPORATION ("Aveda" or "Defendant"), a foreign corporation registered in Illinois, alleges on personal knowledge, due investigation of her counsel, and, where indicated, on information and belief as follows:

**NATURE OF THE ACTION**

1.      Plaintiffs bring this action for damages and other legal and equitable remedies resulting from the illegal actions of Defendant in collecting, storing and using her and other similarly situated individuals' "biometric identifiers" and "biometric information" (referred to collectively at times as "biometrics") without obtaining informed written consent or providing the requisite data retention and destruction policies, in direct violation of BIPA.

2.      BIPA defines "biometric identifiers" as "a retina or iris scan, fingerprint, voiceprint, or *scan* of hand or *face geometry*." 740 ILCS 14/10 (emphasis added).

1

3. BIPA defines "biometric information" as "any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual." *Id.* Biometric information does not include information derived from items or procedures excluded under the definition of biometric identifiers.

4. The Illinois Legislature has found that "[b]iometrics are unlike other unique identifiers that are used to access finances or other sensitive information." 740 ILCS 14/15(c). "For example, social security numbers, when compromised, can be changed. Biometrics, however, are biologically unique to the individual; therefore, once compromised, the individual has no recourse, is at heightened risk for identity theft, and is likely to withdraw from biometric-facilitated transactions." *Id.*

5. In recognition of these concerns over the security of individuals' biometrics the Illinois Legislature enacted BIPA, which provides, *inter alia*, that a private entity like Defendant may not obtain and/or possess an individual's biometrics unless it informs that person in writing that biometric identifiers or information will be collected or stored. *See* 740 ILCS 14/15(b).

6. BIPA further requires that entities collecting biometrics must inform those persons in writing of the specific purpose and length of term for which such biometric identifiers or biometric information are being collected, stored and used. *See id.*

7. Moreover, entities collecting biometrics must publish publicly available written retention schedules and guidelines for permanently destroying biometrics collected. *See* 740 ILCS 14/15(a).

8. Further, the entity must store, transmit and protect an individual's biometric identifiers and biometric information using the same standard of care in the industry and in a

manner at least as protective as the means used to protect other confidential and sensitive information.  *See* 740 ILCS 14/15(c).

9.      Finally, the entity is expressly prohibited from selling, leasing, trading or otherwise profiting from an individual's biometrics.  *See* 740 ILCS 15/15(c).

10.      In direct violation of each of the foregoing provisions of §§ 15(a) and 15(b) of BIPA, Defendant collected, stored and used–without first providing notice, obtaining informed written consent or publishing proper data retention policies–the facial geometry and associated personally identifying information of thousands of customers, as they used Defendant's virtual "Try-On" feature.

11.      Using augmented reality technology, Defendant's virtual "Try-On" feature, which is available on Defendant's website, allows consumers to virtually try-on different hair styles and colors.

12.      In order to use Defendant's "Try-On" feature, consumers are required to either turn on and use a live camera or upload a picture of themselves, at which point Defendant's application scans the customers face and applies the selected color to the consumer's hair.

13.      Defendant does not notify consumers that it is collecting biometric data prior to the consumer turning on a live camera or uploading a picture of themselves so their face can be scanned. However, buried in its privacy policy that is only accessible via a hyperlink, Defendant admits that they collect biometric data from consumers who use its virtual "Try-On" feature.

14.      If Defendant's database of scanned and digitized faces were to fall into the wrong hands, by data breach or otherwise, the consumers to whom these sensitive and immutable biometric identifiers belong could have their identities stolen, among other serious issues.

3

15.     BIPA confers on Plaintiffs and all other similarly situated Illinois residents a right to know of such risks, which are inherently presented by the collection and storage of biometrics, and a right to know how long such risks will persist after using Defendant's "Try-On" feature.

16.     Yet, Defendant never adequately informed Plaintiffs or the Class of its biometrics collection practices, never obtained the requisite written consent from Plaintiffs or the Class regarding its biometric practices, and never provided proper data retention or destruction policies to Plaintiffs or the Class.

17.     Plaintiffs bring this action to prevent Defendant from further violating the privacy rights of Illinois residents and to recover statutory damages for Defendant's unauthorized collection, storage and use of these individuals' biometrics in violation of BIPA.

## JURISDICTION AND VENUE

18.     This Court has jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. 5 1332, because: (a) this is a proposed class action in which there are at least 100 Class members; (b) the parties are minimally diverse, as Plaintiff and Defendants are domiciled in different states/countries; and (c) the combined claims of Class members exceed $5,000,000, exclusive of interest, attorneys' fees, and costs.

19.     This Court has personal jurisdiction over Defendant because it regularly ran and provided virtual Try-On tool sessions to users in Illinois, including by downloading the code necessary to run the virtual Try-On tool sessions onto Illinois consumers' devices, without the consumers' knowledge, while the consumers were in Illinois. Additionally, Defendant removed this action to federal court and consented to jurisdiction.

20.     Venue is also appropriate in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.

## PARTIES

21.     Plaintiff Cheri Clarke is, and has been at all relevant times, a citizen of Illinois residing in the City of Oak Forest.

22.     Plaintiff Jay Vyas is a permanent legal resident who encountered the Defendant's website while residing in Cook County, Illinois.

23.     Plaintiff Brittany Ferguson is an individual citizen of the State of Illinois, who encountered the Defendant's website while residing in Cook County, Illinois.

24.     Defendant Aveda Corporation, is a foreign corporation organized under the laws of Delaware and registered to do business in the State of Illinois.

## FACTUAL BACKGROUND

**I.      Illinois' Biometric Information Privacy Act.**

25.     In 2008, Illinois enacted BIPA due to the "very serious need [for] protections for the citizens of Illinois when it [comes to their] biometric information." Illinois House Transcript, 2008 Reg. Sess. No. 276. BIPA makes it unlawful for a company to, *inter alia*, "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers and/or biometric information, unless it first:

> (1) informs the subject…in writing that a biometric identifier or biometric information is being collected or stored;

> (2) informs the subject…in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and

> (3) receives a written release executed by the subject of the biometric identifier or biometric information or the subject's legally authorized representative."

740 ILCS 14/15 (b).

26.     Section 15(a) of BIPA also provides:

A private entity in possession of biometric identifiers or biometric information must develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first.

740 ILCS 14/15(a).

27.     BIPA provides for statutory damages, injunctive relief, reasonable attorney's fees and costs, and other relief "as the State or federal court may deem appropriate" when a private entity violates a consumer's rights under the statute. 740 ILCS 14/20. Where a violation is the result of negligence, BIPA provides for the greater of actual damages or $1,000 in liquidated damages per violation, and if the violation was intentional or reckless, the greater of actual damages and liquidated damages of $5,000 per violation. *Id.*

28.     As alleged below, Defendant's practices of collecting, storing and using individuals' biometric *identifiers* (specifically, facial geometry) and associated biometric information, without informed written consent, violated Sections 15(b) of BIPA. Defendant's failure to provide a publicly available written policy regarding their schedule and guidelines for the retention and permanent destruction of individuals' biometric identifiers and biometric information also violated § 15(a) of BIPA. Indeed, because Defendant had no retention schedule policy and made no such policy available to the public, Defendant failed to comply with a BIPA-compliant policy in their handling of Plaintiffs' and the Class's personally identifying data in the form of facial geometry scans.

## II.     Defendant Violates Illinois' Biometric Information Privacy Act.

29.     Defendant is a global beauty company that markets a wide range of hair, skin, and body products, including color cosmetics. Defendant's products are sold through its website,

www.aveda.com, among other places. As is relevant here, Defendant's website offers a virtual "Try-On" tool which allows consumers to virtually try-on different hair colors.

30.     Below is a screenshot of the Aveda website landing page for consumers to access Defendant's virtual "Try-On" feature.





31.     To use Defendant's "Try-On" tool, consumers are required to either turn on and use a live camera or upload a picture of themselves, at which point Defendant's application scans the customers face and applies the selected color to the consumer's hair.

32.     The virtual Try-On tool is powered by an application called "YouCam." This application operates by *capturing the facial geometry* of users' uploaded photos or live video. On

information and belief, these facial-geometry scans are used to identify the shape and features of the user's face to accurately overlay the virtual hair color onto the image provided, and the Try-On tool could not function without scanning facial geometry.

33.     On information and belief, Perfect Corp., the maker of the YouCam product, licenses the virtual Try-On technology to Defendant and runs the tool on behalf of Defendant at Defendant's direction.

34.     On information and belief, the technology underlying the YouCam virtual hair color Try-On tool used by Defendant is the same as, or substantially similar to, the YouCam make-up Try-On tool also offered by Perfect Corp., and both tools scan facial features in the same manner. According to one article, the YouCam makeup Try-On tool "uses 100 points of tracking on the face for facial recognition."[1] The photo below, taken from the YouCam developer's website, illustrates the facial-geometry patters that power the application.



35.     In other words, the algorithms extract and create a unique digital representation of the face and its measurements (i.e., a face template) based on the scan of the consumer's facial

---

[1] Leah Prinzivalli, How YouCam Makeup is building a beauty AR empire, Glossy (Jul. 5, 2018), available at https://www.glossy.co/beauty/how-youcam-makeup-is-building-a-beauty-ar-empire/.

landmarks and facial geometry. Each face template is a distinct numerical representation of the unique shape and geometry of an individual's facial image, including the contours of, and distance between, unique facial landmarks and features.

36.    Of note, the YouCam virtual hair color Try-On tool at issue is also accessible on Perfect Corp.'s website.[2] Currently, upon accessing the tool, Perfect Crop. issues a disclaimer regarding the collection of ***facial geometry scans*** and ***biometric data***.  It reads: "Our AR and AI simulation service provider may process, collect, capture, store, use, receive, or otherwise obtain a ***scan of your*** face or any data or ***information based on the scan***, which may include your ***face geometry*** ('biometric data') for the purpose of providing you with a personalized AR and AI simulation experience." (emphasis added). A screen capture of the disclaimer is shown below.



37.    Moreover, buried in Defendant's own Privacy Policy is an implicit admission that, at minimum, it collected biometric *identifiers* in the form of a scan of face geometry.[3] An earlier version of Defendant's Privacy Policy updated June 30, 2020 states, under the heading

---

[2] https://www.perfectcorp.com/business/showcase/hair-color.
[3] *See Aveda United States Privacy Policy*, Aveda, https://www.aveda.com/customer-service-privacy.

"INFORMATION WE COLLECT," that "We may collect or may have collected the following categories of information about you . . . Biometric information, such as facial images (for example, if you use one of our make-up try on applications)." On April 21, 2023, the Privacy Policy was updated, and the revisions imply that scans of facial geometry (a type of biometric identifier) were not limited to the make-up Try-On tool. Specifically, now under the heading "INFORMATION WE PROCESS," Defendant simply states it "may collect or process . . . **Biometric information**, such as facial geometry if you use certain of our virtual try-on applications." (emphasis in original).

38.     On information and belief, the scan of face geometry generated and collected by the hair color Try-On tool is highly precise and detailed, and capable of identifying the user. Every person has unique features by which they can be identified using a set of standard quantitative measurements, namely, "biometric identifiers." For example, each person has a unique facial geometry composed of, among other measures, distances between key facial landmarks (i.e., eyes, nose, forehead, etc.) and ratios between those distances. Once an image of a person's face is scanned and its biometric measurements are captured, computers can store that information and ***use it to identify that individual*** any other time that person's face appears on the internet or in public.

39.     In other words, the generated scan of face geometry is capable of identifying an individual even if it was anonymously collected by Defendant and was not accompanied by personal contact data like name, phone number, or email address. This technology exists now and continues to mature. And for this reason, BIPA defines "biometric identifier" as a scan of face geometry which, by definition, can identify an individual.

40.     As just one example, Clearview AI, Inc. ("Clearview") gained national attention after a New York Times investigation documented how anyone with access to the company's

mobile app could snap or upload a picture and identify an individual in the image with a high level of accuracy.[4] Specifically, Clearview used facial recognition technology to capture more than three billion scans of face geometry (i.e., faceprints) from publicly-available photos on the internet. To create a faceprint, Clearview's system scans the photo, measures and records data such as the shape of the cheekbones and the distance between eyes, nose, and ears, and assigns that data a numerical value. These faceprints were then collected into a database, with faceprints for similar-looking faces clustered together. Clearview sold access to its technology, database, and investigative tools—the "world's best facial-recognition technology combined with the world's largest database of headshots"—by subscription to public and private entities.[5] When a user wants to identify someone, the user uploads a photo. The system then processes the request, finds matches, and returns links to publicly-available images on the internet. The linked websites will include additional information about the person identified, including full name and location.

41. Indeed, according to a report from Buzzfeed News, the Clearview database employs more than 3 billion pictures from social media and millions of websites to find a matching identity.[6] And people associated with as many as 2,228 agencies, businesses, and organizations—including the Department of Justice, U.S. Immigration and Customs Enforcement, Macy's, Walmart, and the NBA—have done almost 500,000 facial recognition searches using Clearview technology.[7]

42. Thus, the data that Defendant gathered through the Try-On tool is, by definition, capable of identifying Plaintiffs and the Class because the data amounts to a "scan of face

---

[4] https://www.nytimes.com/2020/01/18/technology/clearview-privacy-facial-recognition.html?searchResultPosition=1.
[5] https://www.consumerreports.org/electronics-computers/privacy/why-illinois-has-become-a-battleground-for-facial-recognition-protection-a1376302521/.
[6] https://www.buzzfeednews.com/article/ryanmac/clearview-ai-fbi-ice-global-law-enforcement
[7] *Id.*

geometry." At minimum, the facial geometry scans can be used to identify Plaintiffs and the Class when coupled with existing third-party products and services discussed above.

43.     Unbeknown to the average person, and in direct violation of § 15(b)(1) of BIPA, Defendant scanned and collected, and then stored at least temporarily in an electronic database, digital copies of each consumers' facial geometry during the consumer's use of Defendant's virtual "Try-On" feature – all without ever informing anyone of this practice in writing.

44.     In direct violation of § 15(b)(1) of BIPA, Defendant never informed or disclosed to consumers, anywhere on the "Try-On" features' website landing page, that it collects biometric data.

45.     As indicated in the screenshot above, Defendant merely states that it will "use your photo for the purpose of providing you your virtual look and product recommendations." When using the Try-On tool, Defendant never indicates or discloses to the consumer that it is collecting their biometric identifiers.

46.     In direct violation of § 15(b)(2) of BIPA, Defendant never informed Illinois consumers, who used Defendant's "Try-On" feature and had their facial geometry collected, of the specific purpose and length of time for which their biometric identifiers or information would be collected, stored and used.

47.     As indicated in the screenshot above, Defendant merely states that users' picture would be "retained for up to 24 hours"[8] without providing further details regarding the retention and deletion schedule for the biometric identifiers and information collected.

---

[8] *Find Your New Shade*, Aveda, https://www.aveda.com/hair-color-ideas?gclid=Cj0KCQiAv6yCBhCLARIsABqJTjYUGjrScTjbhLqcz56Wn2S2PYZ1yLERf3ZJiKs3gU-7Yjqvno0_wXwaAv0xEALw_wcB&gclsrc=aw.ds (last visited Mar. 15, 2021).

48.     In direct violation of § 15(b)(3) of BIPA, Defendant never obtained a written release to collect and store biometric information from any Illinois consumer that used its virtual "Try-On" feature.

49.     In direct violation of § 15(a) of BIPA, Defendant did not have written, publicly available policies identifying its retention schedules or guidelines for permanently destroying any of these biometric identifiers or biometric information.

50.     The uploading, Defendant's capture, and Defendant's use of these biometric identifiers of Plaintiff and all Class members all take place in the state of Illinois. Plaintiffs were physically in Illinois and their photos and videos were uploaded to Defendant from Illinois. Defendant's failure to post a publicly available retention schedule and guidelines for permanently destroying such biometric identifiers, along with their failure to comply with such, also took place in Illinois.

**III.    Plaintiffs' Experiences.**

51.     Plaintiffs used Defendant's virtual "Try-On" feature in or around May 2020.

52.     In order to use the augmented reality "Try-On" application and virtually try-on different hair styles and colors, Defendant required Plaintiffs to either turn on and use a live camera or upload a picture of themselves, at which point Defendant's application scanned and collected, and stored in an electronic database, digital copies of Plaintiffs' facial geometry.

53.     Each and every time Plaintiffs utilized the virtual "Try-On" feature, they were required to use a live camera or upload a picture of herself, at which point the application scanned, collected and stored her facial geometry as part of the virtual "Try-On" feature.

54.     Each time Plaintiffs used the virtual "Try-On" feature, they either used a live camera or uploaded a picture of herself, at which point the application scanned, collected and stored her facial geometry as part of the virtual "Try-On" feature.

55.     On each occasion, Plaintiffs were granted access to Defendant's virtual "Try-On" feature and were able to simulate what they would look like with different hair styles and colors.

56.     Plaintiffs never consented, agreed or gave permission–written or otherwise–to Defendant for the collection or storage of their unique biometric identifiers or biometric information.

57.     Further, Defendant never provided Plaintiffs with nor did they ever sign a written release allowing Defendant to collect or store their unique biometric identifiers or biometric information.

58.     Likewise, Defendant never provided Plaintiffs with the requisite statutory disclosures nor an opportunity to prohibit or prevent the collection, storage or use of their unique biometric identifiers or biometric information.

59.     By collecting Plaintiffs' unique biometric identifiers or biometric information without their consent, written or otherwise, Defendant invaded Plaintiffs' statutorily protected right to privacy in their biometrics.

60.     Finally, Defendant never provided Plaintiffs with a retention schedule and/or guideline for permanently destroying their biometric identifiers and biometric information. Because Defendant had no retention schedule policy and made no such policy available to the public, Defendant failed to comply with a BIPA-compliant policy in its handling of Plaintiffs' personally identifying data.

## CLASS ALLEGATIONS

61.     **Class Definition:** Plaintiffs bring this action pursuant to Rules 23(a), 23(b)(2), 23(b)(3), and 23(b)(4) on behalf of a class of similarly situated individuals, defined as follows (the "Class"):

> All individuals who, while residing in the State of Illinois, had their facial geometry collected, captured, received or otherwise obtained and/or stored by Defendant.

62.     **Numerosity:** Pursuant to Rule 23(a)(1), the number of persons within the Class is substantial, believed to amount to thousands of persons. It is, therefore, impractical to join each member of the Class as a named Plaintiff. Further, the size and relatively modest value of the claims of the individual members of the Class renders joinder impractical. Accordingly, utilization of the class action mechanism is the most economically feasible means of determining and adjudicating the merits of this litigation. Moreover, the Class is ascertainable and identifiable from Defendant's records.

63.     **Commonality and Predominance:** Pursuant to Rules 23(a)(2) and 23(b)(3), there are well-defined common questions of fact and law that exist as to all members of the Class and that predominate over any questions affecting only individual members of the Class. These common legal and factual questions, which do not vary from Class member to Class member, and which may be determined without reference to the individual circumstances of any class member, include, but are not limited to, the following:

> (a) whether Defendant collected or otherwise obtained Plaintiffs' and the Class' biometric identifiers or biometric information;
>
> (b) whether Defendant properly informed Plaintiffs and the Class that it collected, used, and stored their biometric identifiers or biometric information;

(c) whether Defendant obtained a written release (as defined in 740 ILCS 14/10) to collect, use, and store Plaintiffs' and the Class' biometric identifiers or biometric information;

(d) whether Defendant developed a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of their last interaction, whichever occurs first; and

(e) whether Defendant's violations of BIPA were committed intentionally, recklessly, or negligently.

64.    **Adequate Representation:** Pursuant to Rule 23(a)(4), Plaintiffs have retained and are represented by qualified and competent counsel who are highly experienced in complex consumer class action litigation. Plaintiffs and their counsel are committed to vigorously prosecuting this class action.  Moreover, Plaintiffs are able to fairly and adequately represent and protect the interests of such a Class.  Neither Plaintiffs nor their counsel have any interest adverse to, or in conflict with, the interests of the absent members of the Class. Plaintiffs have raised viable statutory claims or the type reasonably expected to be raised by members of the Class, and will vigorously pursue those claims.  If necessary, Plaintiffs may seek leave of this Court to amend this Class Action Complaint to include additional Class representatives to represent the Class, additional claims as may be appropriate, or to amend the Class definition to address any steps that Defendant took.

65.    **Superiority:** Pursuant to Rule 23(b)(3), a class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all Class members is impracticable.  Even if every member of the Class could afford to pursue individual litigation, the Court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed. Individualized litigation

would also present the potential for varying, inconsistent or contradictory judgments, and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. By contrast, the maintenance of this action as a class action, with respect to some or all of the issues presented herein, presents few management difficulties, conserves the resources of the parties and of the court system and protects the rights of each member of the Class. Plaintiffs anticipates no difficulty in the management of this action as a class action. Class-wide relief is essential to compliance with BIPA.

**COUNT I – FOR DAMAGES AGAINST DEFENDANT**
**VIOLATION OF 740 ILCS 14/15(a) – FAILURE TO INSTITUTE, MAINTAIN, AND ADHERE TO PUBLICLY AVAILABLE RETENTION SCHEDULE**

66.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

67.     BIPA mandates that companies in possession of biometric data establish and maintain a satisfactory biometric data retention – and, importantly, deletion – policy. Specifically, those companies must: (i) make publicly available a written policy establishing a retention schedule and guidelines for permanent deletion of biometric data (at most three years after the company's last interaction with the individual); and (ii) actually adhere to that retention schedule and actually delete the biometric information. *See* 740 ILCS 14/15(a).

68.     Defendant failed to comply with these BIPA mandates.

69.     Defendant is a company registered to do business in Illinois and thus qualifies as a "private entity" under BIPA. *See* 740 ILCS 14/10.

70.     Plaintiffs are individuals who had their "biometric identifiers" captured and/or collected by Defendant, as explained in detail above. *See* 740 ILCS 14/10.

71.     Facial geometry is a biometric identifier protected by BIPA. As explained above, the scans of facial geometry generated and collected by Defendant are capable of identifying Plaintiffs and the Class.

72.     Defendant failed to provide a publicly available retention schedule or guidelines for permanently destroying biometric identifiers and biometric information as specified by BIPA. *See* 740 ILCS 14/15(a).

73.     Upon information and belief, Defendant lacked retention schedules and guidelines for permanently destroying Plaintiffs' and the Class's biometric data and have not and will not destroy Plaintiffs' and the Class's biometric data when the initial purpose for collecting or obtaining such data has been satisfied or within three years of the individual's last interaction with the company. Because Defendant had no retention schedule policy and made no such policy available to the public, Defendant failed to comply with a BIPA-compliant policy in their handling of Plaintiffs' and Class members' personally identifying data.

74.     The Try-On tool could not function without collecting and at least temporarily storing scans of face geometry.

75.     On behalf of themselves and the Class, Plaintiffs seek: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiffs and the Class by requiring Defendant to comply with BIPA's requirements for the collection, capture, storage, and use of biometric identifiers and biometric information as described herein; (3) statutory damages of $5,000 for each intentional and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2) or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS 14/20(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

**COUNT II – FOR DAMAGES AGAINST DEFENDANT**
**VIOLATION OF 740 ILCS 14/15-(b) – FAILURE TO OBTAIN INFORMED WRITTEN CONSENT AND**
**RELEASE BEFORE OBTAINING BIOMETRIC IDENTIFIERS OR INFORMATION**

76.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

77.     BIPA requires companies to obtain informed written consent from individuals before acquiring their biometric data. Specifically, BIPA makes it unlawful for any private entity to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information unless [the entity] first: (1) informs the subject…in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject…in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; **and** (3) receives a written release executed by the subject of the biometric identifier or biometric information…" 740 ILCS 14/15(b) (emphasis added).

78.     Defendant failed to comply with these BIPA mandates.

79.     Defendant is a company registered to do business in Illinois and thus qualifies as a "private entity" under BIPA. *See* 740 ILCS 14/10.

80.     Plaintiffs and the Class are individuals who have had their "biometric identifiers" collected and/or captured by Defendant, as explained in detail above. *See* 740 ILCS 14/10.

81.     Facial geometry is a biometric identifier protected by BIPA. As explained above, the scans of facial geometry generated and collected by Defendant are capable of identifying Plaintiffs and the Class.

82.     Defendant systematically and automatically collected, captured, used, and stored Plaintiffs' and the Class's biometric identifiers and/or biometric information without first obtaining the written release required by 740 ILCS 14/15(b)(3).

19

83.    The Try-On tool could not function without collecting and at least temporarily storing scans of face geometry.

84.    Defendant never informed Plaintiffs, and never informed any member of the Class at least prior to March 2021, in writing that their biometric identifiers and/or biometric information were being collected, captured, stored, and/or used, nor did Defendant inform Plaintiffs and the Class in writing of the specific purpose(s) and length of term for which their biometric identifiers and/or biometric information were being collected, stored, used and disseminated as required by 740 ILCS 14/15(b)(1)-(2).

85.    By collecting, capturing, storing, and/or using Plaintiffs' and the Class's biometric identifiers and biometric information as described herein, Defendant violated Plaintiffs' and the Class's rights to privacy in their biometric identifiers and/or biometric information as set forth in BIPA. *See* 740 ILCS 14/1, *et seq*.

86.    On behalf of themselves and the Class, Plaintiffs seek: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiffs and the Class by requiring Defendant to comply with BIPA's requirements for the collection, captures, storage, use and dissemination of biometric identifiers and biometric information as described herein; (3) statutory damages of $5,000 for each intentional and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2) or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS 14/20(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs Cheri Clarke, Jay Vyas, and Brittany Ferguson, on behalf of themselves and the proposed Class, respectfully requests that this Court enter an Order:

A.  Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiffs as representatives of the Class, and appointing his counsel as Class Counsel;

B.  Declaring that Defendant's actions, as set out above, violate BIPA, 740 ILCS 14/1, *et seq.*;

C.  Awarding statutory damages of $5,000.00 for each and every intentional and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2), or alternatively, statutory damages of $1,000.00 for each and every violation pursuant to 740 ILCS 14/20(1) if the Court finds that Defendant's violations were negligent;

D.  Awarding injunctive and other equitable relief as is necessary to protect the interests of the Class, including, *inter alia*, an Order requiring Defendant to collect, store, and use biometric identifiers and/or biometric information in compliance with BIPA;

E.  Awarding Plaintiffs and the Class their reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3);

F.  Awarding Plaintiffs and the Class pre- and post-judgment interest, to the extent allowable; and

G.  Awarding such other and further relief as equity and justice may require.

## **JURY TRIAL**

Plaintiffs demand a trial by jury for all issues so triable.

21

Dated: December 18, 2023

Respectfully submitted,

s/ *Gary M. Klinger*
Gary M. Klinger
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, Illinois 60606
Telephone: (866) 252-0878
gklinger@milberg.com


Brandon M. Wise – IL Bar # 6319580
**PEIFFER WOLF CARR**
**KANE & CONWAY, LLP**
818 Lafayette Ave., Floor 2
St. Louis, MO 63104
Ph: 314-833-4825
bwise@peifferwolf.com

Jonathan M. Jagher
**FREED KANNER LONDON &**
**MILLEN LLC**
923 Fayette St.
Conshohocken, PA 19428
Tel: (610) 234-6486
jjagher@fklmlaw.com

Brian M. Hogan
**FREED KANNER LONDON &**
**MILLEN LLC**
2201 Waukegan Road, Suite 130
Bannockburn, IL 60015
Tel: (224) 632-4500
bhogan@fklmlaw.com


Katrina Carroll
**CARLSON LYNCH LLP**
111 W. Washington Street
Suite 1240
Chicago, IL 60602
Tel: 312.750.1591
kcarroll@carlsonlynch.com

Mason Barney
**SIRI & GLIMSTAD LLP**
200 Park Avenue, 17th Floor
New York, NY 10166
Tel: (212) 532-1091
mbarney@sirillp.com

*Attorneys for Plaintiff and the Proposed
Class*